[Civ. No. 5834.  First Appellate District, Division Two.—August 12, 1927.]

ANNA   GASTER,   Respondent,   v.   A.   B.   HINKLEY, Appellant.

Pierce & Carlson and Donahue, Hynes & Hamlin for Appellant.

Daniel A. Ryan for Respondent.

THOMPSON (R. L.), P. J., *pro tem.*—This is an appeal from an order granting a new trial after a verdict had been secured in favor of the defendant.

On the motion for a new trial the respondent contended that certain instructions which were given at the request of the appellant were erroneous and therefore warranted the granting of a new trial, but the chief question involved on this appeal is whether in view of the evidence the trial judge abused his discretion in granting the new trial.

On November 8, 1923, at about 8 o'clock P. M., the defendant was driving his Essex coupe automobile from Richmond toward Oakland along San Pablo Avenue. It was a rainy night. There was a double line of street-car tracks along this avenue. Seated upon defendant's right on the front seat was his friend Shroeder. Defendant's wife and Mrs. Shroeder occupied the rear seat. All agreed they were traveling about fifteen miles an hour, with the machine running over the westerly rail of the street-car track.

The plaintiff, who is an elderly lady, had been shopping at a grocery store on the westerly side of San Pablo Avenue at its intersection with Thirtieth Street. With a number of small parcels under her left arm she went to the crossing where she stopped at the westerly street line for a few moments waiting for the traffic to pass. Southerly from the intersection of these streets, some fifty feet distant, was an excavation in the easterly portion of the street, eighteen or twenty feet from the easterly curb. This hole was about four feet square and was inclosed with a fence. A pile of dirt five feet in depth lay upon the pavement about the hole. This mound of dirt extended to within three or four

feet of the easterly rail and so far toward the east as to leave scant room for a vehicle to pass between it and the easterly curb. Lighted lanterns were placed as a warning upon this obstruction.

After the traffic had passed the plaintiff crossed to the center of the street and stood between the two tracks, where she waited a moment for the passing of an automobile on the easterly side, which was going toward Richmond. She then looked northerly, and before continuing on her way she turned again and looked southerly toward Oakland. At this instant another car came from the south and in passing the dump of dirt in the street, it suddenly swerved toward her. She stepped back to avoid this car and was instantly struck by the left fender of defendant's car, which was traveling southerly near the center of the street. The plaintiff was hurled to the pavement and sustained severe injuries consisting of a fractured left leg, three broken ribs, an injured spine and numerous bruises and contusions about the body. She was taken by the defendant to an emergency hospital and remained under a doctor's care for several months.

The defendant's story of the affair was substantially corroborated by all of the occupants of his car. No other witness observed the immediate accident. The defendant testified that he and his wife had driven to Richmond for their friends, Mr. and Mrs. Shroeder, and that they were returning to Oakland along San Pablo Avenue about 8 o'clock P. M.; that it was raining lightly and the pavement was wet, but that his view of the street was not obscured. He said that they were traveling fifteen miles an hour ''astride of the western rail,'' and testified that ''as we neared the intersection of Thirtieth street I noticed a woman standing . . . between the two rails. . . . When I first saw the woman she was between thirty and forty feet of me. Shortly after that a car coming from Oakland in this vicinity suddenly swerved to the left . . . immediately upon the swerving of this car the woman stepped backward and before I could turn my car to the right she had come in contact with the left . . . bumper or fender, and fell to . . . the street.'' He then testified that he stopped the car within fifteen or twenty feet, and returning took the injured lady to the hospital for treatment.

In spite of the fact that the defendant saw the plaintiff standing in the center of the street dangerously near the exact line in which he was traveling and thirty or forty feet ahead of him, he neither sounded his horn as a warning, nor changed his course, although the street was unobstructed upon his right. In this regard the following testimony was adduced: "Q. Why didn't you turn your car to the right when you were thirty feet away? A. The lady had crossed my path. I had a well-defined path astride the rail. She was facing the other way, and had apparently crossed my path and was going on. I saw no reason why I should swerve my car. . . . Q. Why did you not blow your horn? A. . . . I partly thought it would confuse the lady, and I saw no reason for blowing my horn. . . . Q. How far away from the lady were you when you swerved to the right? A. The lady had either come in contact with my car, or I was so close to her that I could not. . . . I attempted to swerve it, but I did not succeed before she came in contact with the car."

It will be observed that the defendant testified that he was traveling only fifteen miles per hour, and that he plainly saw the plaintiff standing between the tracks thirty or forty feet ahead of his car. For the purpose of impeachment he was asked if he did not tell a police inspector by the name of Powers, at the hospital the night of the accident, that he was running twenty miles an hour at the time of the accident and that he did not see the plaintiff until he struck her. He emphatically denied talking with the inspector or telling him either that he was traveling twenty miles an hour, or that he did not see the plaintiff until he struck her. The inspector, Powers, was then called and testified positively that he did talk with the defendant at the time and place mentioned, and that the defendant then told him he was traveling twenty miles an hour and did not see the lady until he struck her. This was a flat contradiction upon material testimony and was competent for the trial court to consider upon a motion for a new trial.

One witness for plaintiff testified that immediately prior to the accident the defendant was running twenty-five or thirty miles an hour. Several witnesses testified that the plaintiff was picked up seventy-five or eighty feet southerly of the point where she was struck. This was not only in

conflict with defendant's evidence, but furnishes some proof which tends to show that he was driving at an unlawful rate of speed.

Much of the trial was devoted to an attempt to prove that the plaintiff sustained serious and permanent injuries as a result of the accident, while upon the contrary, the defendant made a strenuous effort to refute this showing. To this end much time was consumed in examining physicians as expert witnesses. For the purpose of thus contradicting plaintiff, Doctor Irwin was called by the defendant. He had examined the plaintiff at his office three or four weeks prior to the trial, and testified to facts generally discrediting plaintiff's claim that she was seriously and permanently injured. He testified that she told him she had come alone to his office; that he did not see her son at his office; that she then walked without the aid of a cane, and with approximately fifty per cent more ease and apparent comfort than she appeared to exhibit in her effort to walk before the jury during the trial. The plain inference which was conveyed by this evidence on the part of the doctor was that the plaintiff was feigning more serious results from the accident than she really suffered, although he denied this inference. Nevertheless, it is apparent that his evidence would have a potent influence to prejudice the jury against the plaintiff, provided his testimony was given full credit. Undoubtedly it would create the impression that she was fraudulently trying to deceive the jury and would therefore be likely to result in their discrediting and rejecting her testimony. Both the plaintiff and her son contradicted the doctor, saying that they went together to his office; that the son personally entered the presence of the doctor on that occasion, and that the plaintiff did not tell him she had come alone to his office.

This court does not pretend to pass upon the credibility of witnesses, nor to determine which version of the story was correct. There was, however, a sharp conflict with respect to material facts which it was competent for the trial court to consider upon a motion for new trial.

In passing upon the question of whether there was an abuse of discretion on the part of the trial judge in granting the motion for a new trial, the entire state of the record should be considered, including the effort to impeach

both the defendant and the doctor. If this evidence, taken as a whole, was favorable to plaintiff, or was such as to cause reasonable and unbiased minds to arrive at contrary conclusions as to the merits of the cause, then the discretion of the trial judge in granting the new trial will not be disturbed. (*Merralls* v. *Southern Pacific Co.*, 182 Cal. 18, 22 [186 Pac. 778].)

While the evidence on the part of plaintiff furnished little proof of negligence on the part of the defendant, yet the defendant's own testimony supplied proof of conduct dangerously close to what might amount to a lack of ordinary care and prudence. On appeal from an order granting a new trial, the appellate court is not called upon to pass on the weight of evidence, but to determine only whether there is substantial evidence in the record supporting the conclusions of the trial court in granting the new trial. The granting of a new trial rests largely in the discretion of the trial court. (2 Cal. Jur. 905, sec. 533; *Quinn* v. *Kenyon*, 22 Cal. 82.)

If the weight of the evidence preponderates against the verdict, it is the duty of the trial judge to set it aside. (*Gordon* v. *Roberts*, 162 Cal. 506, 509 [123 Pac. 288]; *Warner* v. *Thomas etc. Works*, 105 Cal. 409 [38 Pac. 960].) If the evidence is conflicting, and it does not appear that the trial judge abused his discretion in granting a new trial, his order will not be disturbed on appeal. (*Butler* v. *Miller*, 69 Cal. App. 586 [231 Pac. 1007].)

The following instruction was given at the request of the defendant: "Before the plaintiff can recover in this action, it must appear to your satisfaction that the defendant was guilty of some act of negligence which directly contributed to the accident. It must also appear to your satisfaction that the plaintiff was without fault or negligence on her part *which might in any wise have contributed to the accident.*"

Standing alone this instruction was erroneous. The burden of proving the contributory negligence of the plaintiff rested upon the defendant. Not only must it appear that plaintiff was guilty of a lack of ordinary care for her own safety under the crcumstances of the case, but also that this negligence contributed directly and proximately to the injuries which she sustained. (*Gett* v. *Pacific G. & E. Co.*,

192 Cal. 621, 631 [221 Pac. 376] ; 19 Cal. Jur. 649.) To instruct the jury that it was only necessary that plaintiff's negligence should contribute "in anywise" to the injuries which she sustained falls far short of the well-established rule that it must *directly* and *proximately* contribute to the injuries sustained. However, the jury was elsewhere fully and correctly instructed as to all the necessary elements constituting contributory negligence. All of the instructions must be read together, and construed as a whole. (24 Cal. Jur. 857, sec. 113.) The omission of a necessary element from one instruction is not reversible error, provided it is supplied in other instructions. But an incorrect declaration of the law as to a material issue, which appears to have been prejudicial will not be cured by a correct statement of the law in another instruction for the reason that it is impossible to determine which controlled the jury. (2 Cal. Jur. 1027, sec. 611; *Cooper* v. *Spring Valley Water Co.,* 16 Cal. App. 17, 25 [116 Pac. 298]; *Brown* v. *McAllister,* 39 Cal. 573; *Sappenfield* v. *Main St. etc. R. R. Co.,* 91 Cal. 48, 59 [27 Pac. 590].) In *Chidester* v. *Consolidated People's Ditch Co.,* 53 Cal. 56, an instruction was held to be erroneous which declared that the defendant was liable for damages "resulting either directly *or remotely* from the negligence of. the defendant," and was not cured by the subsequent giving of another instruction correctly stating that he was liable only for such negligence as *proximately* caused the damage, for the reason that it was "impossible to determine on which of these (instructions) the jury acted."

In the instant case the following instructions which were given correctly stated the law on that subject: (a) "Contributory negligence is such an act or omission on the part of the plaintiff amounting to a want of ordinary care as concurring or co-operating with the negligent act of a defendant, was the proximate cause of the injury complained of," and (b) "If the plaintiff was herself negligent and her negligence proximately contributed to her injuries, then she cannot recover. . . . "

Since the record in this case will not warrant an interference with the discretion exercised by the trial court in granting a new trial, because of the serious conflict of material evidence, it becomes unnecessary to determine

whether the giving of the erroneous instruction above quoted was prejudicial error.

For the foregoing reasons the order granting a new trial is affirmed.

Nourse, J., and Sturtevant, J., concurred.