[Civ. No. 4367. Third Appellate District.—November 27, 1931.]

MATE SODA, Appellant, v. J. E. MARRIOTT et al., Respondents.

Martin I. Welsh for Appellant.

Myrick, Deering & Scott for Respondents.

THOMPSON (R. L.), J.—This is an appeal from a judgment in favor of the defendants in a suit for damages for the killing of a child as the result of alleged negligence in the operation of an automobile. A reversal of the judgment is sought on the sole ground that erroneous instructions were given to the jury at the request of the defendants.

The defendant, Mrs. Marriott, was driving a Dodge sedan automobile southerly along Riverside Avenue in Roseville, on the afternoon of January 23, 1927. She had just passed the city limits when the accident occurred. The street was eighty feet in width with a twenty-foot paved strip in the center thereof. The spaces between the paved portion and the curbings on either side were surfaced with crushed granite. Riverside Avenue connected with the Sacramento highway just beyond the point where the accident occurred. The traffic was light. No cars were parked at the sides of the street. Only a few machines were

traveling in either direction. A grocery-store was situated on the easterly side of this avenue near the city line. Peter, aged four and a half years, the infant child of the plaintiff, accompanied Mary, his adult sister, to this store. The child was given a piece of candy, and the pair left the store. Peter started to run westerly across the street, pursued by his sister. Mr. Lyons, who was then about 150 feet away, was driving his automobile along the highway toward Roseville. He saw Mary in close pursuit of her brother and, stopping his machine at the curbing near the store, he witnessed the tragedy. Mr. Lyons testified: ''I was traveling north, going from Sacramento to Roseville. Approximately 50 feet from Lee's store I noticed a boy run from the store and a woman chasing him. She made a grab for him and missed him, made a second attempt and missed him again. He darted across the highway hurriedly. . . . I noticed the child first 150 feet (away).''

Mrs. Marriott, who was driving the defendants' machine at the time of the accident, testified she had just left her cousin's home on Earl Street, which was but a few blocks away, and, accompanied by her husband, daughter, uncle and nephew, she was proceeding along Riverside Avenue, within the twenty-mile zone, near the city limits, at the rate of fifteen or twenty miles an hour, when she saw the lady pursuing the child across the highway directly toward her machine; that they had come from behind a car which was driving northerly along the easterly side of the avenue; that when they were quite near the automobile the lady grasped the child's sweater, but failed to hold it, and the child plunged directly in front of the machine, and was struck by the bumper and carried some distance before the car could be stopped. Mrs. Marriott said she had no warning of the approach of the child, and was unable to sound the horn or prevent the accident. She did apply the brakes, but the machine rolled some distance before it was stopped. She said, ''As I was driving along there was traffic coming my way toward Roseville on my left, and the first thing I knew I saw a car stop suddenly and turn to the right of the road, and from a car that was driving in front of that I saw a little blond child running out just as fast as he could run and in my path, being followed by a woman who was trying to reach for him or stop him, and she did

catch a slip of a very loose-knit sweater and pulled him toward her. From my position at the driver's wheel it appeared her grasp broke and threw him toward my car and he struck my bumper on the left and disappeared under the fender as I turned my car to the left and stopped."

There is a conflict regarding the speed at which the machine was running at the time of the accident. Mr. Riga, a bystander, saw the defendants' automobile pass along Riverside Avenue just before the child was struck. He testified: "I saw a machine coming pretty fast and I stopped. . . . Q. How fast was that car traveling when it passed you? A. Approximately 35 miles per hour". Mr. Lee, the merchant who owned the grocery-store near which the accident occurred, heard Mary scream when her brother was struck, and rushed out to ascertain the cause. He testified that the defendants' automobile tires left skid marks on the surface of the street some 75 or 80 feet in length caused by the application of the brakes.

The plaintiff's theory of the cause of the accident is that Mrs. Marriott was driving the car at an excessive rate of speed, in violation of section 113 of the California Vehicle Act, and that she failed to use due care in watching the street for pedestrians, which is evidenced by the fact that she failed to observe Mary and the child racing across the comparatively open and unobstructed street for a distance of 40 feet or more directly in the pathway of her vehicle.

The defense was based chiefly upon the contention that the child was killed as a result of an unavoidable accident, without negligence on the part of Mrs. Marriott, and that the parents of the child were guilty of contributory negligence in permitting the boy to run upon the street unaccompanied by an adult person. The jury was elaborately instructed upon this last-mentioned theory. This was a legitimate defense, but under the undisputed facts of this case it would appear to be entitled to slight weight. Mary, the adult sister, accompanied the child to the store. She was in actual pursuit of the child and was attempting to grasp its clothing at the very moment it was struck by the bumper of the machine. There is slight evidence of neglect in the care of the child. It seems strange that a vigilant driver of an automobile, under the circumstances of this

case, should have failed to see Mary and the child racing across the street for a distance of forty feet or more, into the very pathway of the machine. In view of the facts of this case and the giving of the erroneous instructions complained of, we are unable to say there was not a miscarriage of justice.

Defendants' instruction number 22 is erroneous. It contains the following language: " . . . The circumstances to be considered are those which the evidence shows may reasonably be supposed to have been known to such person and to have influenced his or her mind and actions at the time. These are not, necessarily, the circumstances which afterwards, in the light of the event, it can be seen should have been known to him or her and should have influenced his conduct. Nor is his or her wisdom in determining what to do to be judged by the event". In determining defendants' alleged negligence this instruction wrongfully limits the consideration of the jury to such evidence only as tends to show what actual knowledge of the danger of the situation the driver of the automobile had at the time of the accident. Negligence may be adequately shown by proof of the fact that the driver of an automobile failed to exercise that degree of vigilance in the operation of the vehicle which an ordinarily prudent person should have used under similar circumstances, even though it also appears that the driver had no actual knowledge of the danger. One is bound to exercise ordinary care to anticipate danger. This instruction is fatally defective for that reason. The prejudicial error of this instruction is not avoided by the fact that the jury was elsewhere correctly instructed, in the language of section 113 of the California Vehicle Act, that the driver of an automobile must regulate the speed and operate the machine in a careful and prudent manner consistent with the condition of traffic under the surrounding circumstances. The jury was here specifically directed that they were confined to the consideration of the actual knowledge of danger which was possessed by the driver of the machine, in determining the question of negligence. This is an incorrect statement of the law.

Defendants' instruction number 56 is obscure and misleading. It fails to take into consideration the plaintiff's contention that the automobile was being operated at an

unlawful and excessive rate of speed at the time of the accident. However, the error of this instruction may be cured by the last clause which it contains. It was given in the following language: "While a child of immature years is not held to the exercise of the same degree of care as is one of adult years, nevertheless the driver of an automobile cannot be held liable for injuries to such child due to the act itself in running before her automobile unless either the driver saw such child in time to have avoided striking it by the exercise of ordinary care on her part, or unless a reasonable opportunity to see such child being presented said driver failed to see the child by reason of negligence on the driver's part; furthermore after the child was seen, due care having been exercised by the driver in watching the highway, such driver cannot be held responsible for the hitting of such child unless it was due to the driver's carelessness."

Defendants' instruction number 34 was given in the following language: "You are instructed that it was lawful for Mrs. Marriott, exercising ordinary care, to drive her automobile at the time and place mentioned in the complaint herein at a rate of speed not in excess of 35 miles per hour." This instruction is an invasion of the province of the jury, and disregards the mandate of section 113 of the California Vehicle Act, which requires the operator of a vehicle upon a public highway to "drive the same at a careful and prudent speed not greater than is reasonable and proper, having due regard to the traffic, . . . ." Subject to the twenty-mile zone restriction, the jury had the exclusive right to determine the rate of speed which would be lawful under the particular circumstances of the case.

Mrs. Marriott admitted she was driving the automobile within the twenty-mile zone of the city of Roseville at the time the accident occurred. If this be true, then she was guilty of negligence *per se* in driving the machine at the rate of 35 miles an hour. She testified: "I was still in a twenty-mile zone (when the accident occurred). Q. Do you base your going 20 miles an hour on the fact that you were in the twenty-mile zone? A. I am a strict observer of speed and of zones." The jury was entitled to accept her admission as true that she was driving within the zone where the speed of a vehicle was limited to twenty miles an hour

at the time of the accident, and at the same time assume that the witness, Riga, was correct when he testified she was running "approximately 35 miles an hour". The instruction is therefore fatally erroneous.

■ Defendants' instruction number 52 erroneously charges the jury that the evidence which is offered "on behalf of the plaintiff" must be "of greater weight and more satisfactory and convincing to your minds than is the evidence on the part of the defendants", to entitle the plaintiff to judgment. This instruction fails to inform the jury that the plaintiff is entitled to the benefit of any evidence or admissions offered in behalf of or made by the defendants which supports the plaintiff's case. For instance, the admission of the defendant, Mrs. Marriott, that she was driving her machine within the twenty-mile zone of the city at the time of the accident, would be adequate proof of her negligence *per se*, provided the jury further found that she was then driving at the rate of thirty-five miles an hour, and that this excessive speed was the proximate cause of the accident. ■ It is true that the burden is upon the plaintiff to prove her case by a preponderance of the evidence. It is true that the evidence shall preponderate in favor of the plaintiff's case. But it is not true that this favorable evidence shall necessarily be offered or produced by the plaintiff. It is sufficient if the weight of the evidence supports the plaintiff's case, regardless of which side produces such preponderance. This objectionable instruction was given in the following language: "I instruct you that if after a careful examination and consideration of all the evidence in the case you find that the evidence on behalf of the plaintiff is not of greater weight and more satisfactory and convincing to your minds than is the evidence on the part of the defendants, or that it is equally balanced by the evidence on the part of the defendants, in either of such cases the plaintiff will have failed to prove his case against said defendants by a preponderance of the evidence and it will be your duty to render a verdict in favor of the defendants."

■ It is true that some of the incorrect principles announced in the foregoing challenged instructions were elsewhere correctly stated to the jury in other instructions which were given. It is also true that the instructions which

were given must be construed as a whole, in determining whether they contain reversible error. If a single instruction omits an essential element of the cause, but is a correct declaration of the law so far as it goes, and the omitted element is correctly given in another instruction, the omission will ordinarily be cured thereby. If, however, an essential principle of law is stated to the jury materially incorrect, this prejudicial error will not ordinarily be cured by a correct declaration of the same principle in another instruction. The giving of instructions which are contradictory in essential elements may warrant the reversal of a judgment for the reason that it is impossible to determine which charge controlled the determination of the jury. (*Chidester* v. *Consolidated People's Ditch Co.*, 53 Cal. 56; *Buttrick* v. *Pacific Elec. Ry. Co.*, 86 Cal. App. 136 [260 Pac. 588]; *Gaster* v. *Hinkley*, 85 Cal. App. 55 [258 Pac. 988]; *Noce* v. *United Railroads*, 53 Cal. App. 512 [200 Pac. 819].)

The judgment is reversed and the cause is remanded for a new trial.

Plummer, J., and Preston, P. J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on December 26, 1931, and an application by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on January 25, 1932.