[Civ. No. 4769. Third Appellate District.—May 18, 1933.]

GEORGIA WALTERS, a Minor, etc., Respondent, v. LAWRENCE E. DU FOUR et al., Appellants.

Myrick & Deering and Scott and Russell F. O'Hara for Appellants.

John J. McMahon and Thos. A. Horan for Respondent.

THOMPSON, J.—Judgment for $6,150 was rendered against the defendants pursuant to the verdict of a jury for serious personal injuries sustained by the plaintiff in an automobile casualty, as the result of alleged gross negligence. Flouris Du Four, the minor son of the defendants, Mr. and Mrs. Lawrence Du Four, was operating the car at the time of the accident.

The parties to this action live at Vallejo. The defendant Flouris Du Four was a minor who held an automobile operator's license which was previously issued under the provisions of section 62 of the California Vehicle Act, upon the application and with the signatures of his parents, Mr. and Mrs. Lawrence Du Four. The son had been attending the Junior College at Sacramento. For several months prior to the time of the accident he was accustomed to drive his father's Hupmobile roadster automobile. On the evening of September 20, 1930, the defendant Flouris Du Four, accompanied by three companions who were all sitting in the front seat of this Hupmobile roadster, drove to Airport Chicken Inn,

situated on the Napa highway a few miles from Vallejo, where they spent some time in dancing. After midnight the same group started to return in this automobile to Vallejo. Flouris Du Four was driving the machine. The plaintiff was riding in the car as a guest of Flouris Du Four. All four of the occupants of the vehicle were then riding in the front seat. It was dark. They were traveling at a rate of speed of from 40 to 45 miles an hour. The right-hand wheels of the car had run into the gravel adjacent to the paved strip of the highway. In pulling the wheels of the machine back on to the asphalt the bars attached to the rods connected with the toggle-joint or clevis which controls the brake were displaced. A metallic sound was heard in the vicinity of the right front wheel. The brake became frozen. The driver lost control of the car, and it swerved from the pavement to the right-hand side of the roadway and struck a telephone pole with great force. The plaintiff was thrown through the top of the machine and was seriously injured. She was taken to a hospital, where she lay unconscious for several days. A subsequent examination of the machine by a mechanic disclosed the defect in the apparatus controlling the brake as above related. In a suit for damages for gross negligence on the part of the driver of the automobile under the provisions of section 141¾ of the California Vehicle Act as it then existed, the plaintiff recovered a joint and several judgment pursuant to the verdict of a jury, against the driver of the machine and his parents. From this judgment the defendants have appealed.

It is contended the record discloses no evidence that Flouris Du Four was guilty of gross negligence; that the amendment of section 141¾, *supra*, prior to the time of the trial of this cause, but after the accident occurred, so as to relieve the driver or owner of a car from liability to a guest on account of gross negligence is retroactive and precludes recovery of damages in this case. It is also asserted the court erred in giving to the jury and refusing certain instructions.

The statute above referred to which was in existence in 1930, when this accident occurred, and upon which the respondent relies, then read in part:

"Nothing in this section contained shall be construed as relieving the owner or driver or person responsible for the operation of a vehicle from liability for injury to or death

of such guest proximately resulting from the intoxication, wilful misconduct, *or gross negligence* of such owner, driver or person responsible for the operation of such vehicle."

The foregoing provision of law was amended before this cause was tried so as to take effect August 14, 1931 (Stats. 1931, p. 1693), by eliminating therefrom .the language "or gross negligence".

The amendment of this statute in 1931 did not become retroactive so as to destroy plaintiff's vested right of action for damages for personal injuries received as the result of defendant's gross negligence in the performance of wrongful acts which occurred in 1930. The plaintiff's right of action had already accrued when this statute was amended. This amendment is not a mere change in a rule of procedure or a method of proving a fact. It results in the modification of a former common-law right of action for damages for personal injuries resulting from a tort. In the case of *Callet* v. *Alioto,* 210 Cal. 65 [290 Pac. 438, 441], it was definitely held that the right of a guest to recover damages for personal injuries received as the result of the negligence of the driver of an automobile was a common-law right of action in California, as distinguished from a purely statutory right of action. The court said:

"We are of the opinion that the better reasoned cases permitted a recovery at common law based on failure of the driver to use ordinary care. It therefore follows, under the rules of statutory construction referred to, *supra,* that since section 141¾ of the California Vehicle Act abrogates the common-law rule, in a case involving personal injuries, that statute does not in any way affect causes of action existing on August 14, 1929, the date the statute took effect."

The California Vehicle Act did not create a statutory liability for negligence under the circumstances stated in section 141¾, *supra.* It merely restricted or limited the common-law liability which already existed. It limited the liability of the driver of an automobile for injuries sustained by a guest to circumstances which amount to gross negligence. The common-law cause of action for personal injuries inflicted upon a guest of an owner or driver of an automobile still remained. The liability of an owner or driver of an automobile was first confined by the terms of the statute to injuries sustained as a result of gross negligence, wilful misconduct and drunkenness. By the amendment

to section 141¾, *supra,* which occurred August 14, 1931, the liability for such injuries was abolished when they were received solely as a result of gross negligence, by eliminating from that section the term "gross negligence". All that now remains of the statute is an imposition of liability for such injuries which are sustained as a result of drunkenness or wilful misconduct. But before this last amendment was enacted the plaintiff was injured as a result of what the jury in this case found to be gross negligence of the driver of the machine. The plaintiff's cause of action therefore vested before the final amendment of the statute occurred. That vested right of action was not abrogated by the subsequent amendment of the statute.

It has been repeatedly decided that the effect of the amendment of section 141¾, *supra,* is not retroactive, and does not destroy the vested right of action by a guest for damages for personal injuries received as a result of gross negligence of an owner or driver of an automobile which occurred prior to the enactment of the amended statute. (*Smellie* v. *Southern Pac. Co.,* 212 Cal. 540 [299 Pac. 529]; *Edwards* v. *Gullick,* 213 Cal. 86 [1 Pac. 529]; *Callet* v. *Alioto,* 210 Cal. 65 [290 Pac. 438]; *Perry* v. *McLaughlin,* 212 Cal. 1 [297 Pac. 554]; *Petroff* v. *Nunes,* 123 Cal. App. 614 [11 Pac. (2d) 648]; *Anderson* v. *Ott,* 127 Cal. App. 122 [15 Pac. (2d) 526]; *Manica* v. *Smith,* ▋(Cal. App.) 18 Pac. (2d) 347; *James* v. *Oakland Traction Co.,* 10 Cal. App. 785 [103 Pac. 1082]; *Krause* v. *Rarity,* 210 Cal. 644 [293 Pac. 62, 77 A. L. R. 1327, 1338, note].)

▋ We are of the opinion the record contains substantial evidence to support the implied finding of the jury that the driver of the automobile was guilty of gross negligence. The evidence is uncontradicted that four individuals were riding in the front seat of the roadster at the time of the accident. The machine was running in the night-time at the rate of 40 or 45 miles an hour, in this crowded condition. It is claimed this crowded condition of the car interfered with the driver's free exercise of necessary control over the automobile and prevented him from keeping it on the paved portion of the highway while it was running at a high rate of speed; that the wheels of the car were thus per-

mitted to run into the gravel adjacent to the paved portion of the highway, and that the steering and braking apparatus were defective so that the unusual strain of pulling the car back on to the pavement resulted in freezing the brake and thus caused the accident. It is next asserted the braking apparatus of this machine was known to the defendant Flouris Du Four to have recently frozen in a similar manner, and that in spite of the warning of this dangerous condition of the mechanism, no investigation or repair of the machinery was made, and that this failure to do so furnishes evidence of gross negligence on his part.

It is true the defendant Flouris Du Four denied at the trial that the brakes of his machine had ever previously frozen. For the purpose of impeaching him upon that subject, he was asked if he had not so stated to the plaintiff while she was confined in the hospital as a result of her injuries. He denied that he had ever made such a statement to her. In rebuttal the plaintiff was called and testified in that regard as follows: "Q. Miss Walters, I will ask you if, at the Vallejo General Hospital, . . . November 1st, 1930, . . . the defendant Flouris Du Four stated to you that the wheel had locked and caused the accident in which you were injured, and that he knew that because it had locked on prior occasions while he had been driving the car? A. Yes sir."

On cross-examination she further testified in that regard: "Q. You say that Mr. Du Four stated in your presence, that the front wheel had locked on several occasions; did he say when? A. Yes sir. . . . He told me it had been locked in Sacramento before."

The evidence is uncontradicted that no previous investigation or repairs of the defective brake were made.

The statute makes it unlawful to operate an automobile which contains dangerously defective mechanical apparatus.

It was a question for the jury to determine under the circumstances of the case whether the operating of a crowded car at night at a rate of speed of from 40 to 45 miles an hour with brakes known to have been defective because they had previously locked, and without inspection or repair thereof, constituted gross negligence. We must assume the jury decided that these facts existed and that they constituted evidence of gross negligence. On appeal this court is bound by that finding.

▆ Gross negligence is defined by the California authorities as "lack of slight diligence". (*Malone* v. *Clemow*, 111 Cal. App. 13 [295 Pac. 70]; *Kastel* v. *Stieber*, 115 Cal. 37, 46 [8 Pac. (2d) 474].) It is apparent that no definite line can be drawn by means of a mere linguistic definition which will invariably distinguish between ordinary and gross negligence. Some discretion necessarily rests with the jury in determining whether the circumstances of a particular case constitute gross negligence. By contrast, the authorities of this state have established the rule that it is gross negligence to fail to exercise slight diligence. In a final analysis of the definition of gross negligence, the determination of its existence must depend very largely upon the facts and circumstances of each particular case. Where substantial evidence of gross negligence is shown by the record, the question of its existence should be submitted to the jury under proper instructions. (*Merrill* v. *Pacific Transfer Co.*, 131 Cal. 582 [63 Pac. 915]; *Meighan* v. *Baker*, 119 Cal. App. 582 [6 Pac. (2d) 1015]; *Malone* v. *Clemow, supra; Krause* v. *Rarity*, 210 Cal. 644 [293 Pac. 62, 77 A. L. R. 1327].) A review of authorities on this subject from other jurisdictions is of slight value since they are frequently predicated on statutory definitions different from our own.

▆ The giving of instruction number 34 on the court's own motion is assigned as prejudicial error. This challenged instruction contains a definition of actual and constructive notice, which was given in almost the exact language of sections 18 and 19 of the Civil Code. It contains the following language which is complained of, to wit: "Every person who has actual notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact, has constructive notice of the fact itself in all cases in which by prosecuting such inquiry he might have learned such fact."

There is no doubt this instruction was intended to apply to plaintiff's claim that Flouris Du Four had previous knowledge of the existence of a defective brake, evidenced by his admission that "the wheel had locked and caused the accident, . . . and that he knew that because it had locked on prior occasions while he had been driving the car". In effect this instruction merely directed the jury that if they believed the operator of the

machine had knowledge of the fact that the brakes of that car had previously locked, and they thought that knowledge was sufficient notice of the existence of a defective brake so as to place a prudent person on inquiry, then he would be deemed to have implied knowledge of the fact that the brake was dangerously defective. This appears to be a correct declaration of the law. It also has direct application to plaintiff's theory of the negligent operation of the machine with imputed knowledge of a defective brake.

The appellants contend that this instruction has no application to the evidence of the case, and is therefore prejudicial, because the examination of the machine by a mechanic immediately after the accident occurred demonstrated the fact to be that the defective apparatus which caused the accident consisted of a bent toggle or clevis which prevented a proper application of the brake-band, and that this is not the same defect of which Flouris Du Four admitted he had previous knowledge when he said he knew the accident occurred from the locking of the wheel "because it had locked on prior occasions". This criticism appears to be captious. The toggle or clevis, which was found to be defective, is an inseparable part of the braking apparatus of an automobile. It is connected with the brake-rod and operates upon the device that spreads the brake-band within the brake-drum which is attached to the wheel. It is merely one of the parts of machinery constituting the mechanical braking apparatus. It does not appear exactly what causes the freezing of a brake. Unquestionably different defects might create that result. The examination of defendants' mechanical expert indicates that the defect of a bent toggle or clevis which he discovered was assigned by him as the cause of freezing the brake.

The entire apparatus constituting the braking system of this machine was produced in court and the result of the defect was demonstrated to the jury. Since the record on appeal does not affirmatively show that the defect in the brake which was discovered after the accident had occurred was not different from the one which was admitted by Flouris Du Four to have previously caused the wheel to lock, we must assume the physical demonstration

of the braking apparatus before the jury satisfactorily proved that the defect was the same. At least both were defects which interfered with a proper use of the brakes. Evidently the jury understood the defendants' mechanical expert to testify that the bent and defective clevis did cause the locking of the brake or wheel. He said: "With that clevis in that position, it only operates on one side in this pin. . . . Every time you applied the brake it gave it that motion. In turn that would keep spreading this wider and wider until it came to a point where it slipped completely over that. When it got over that it dropped this here, this was sprung out of shape, and they were tangled up in there. . . . It would not take very much distance to create enough friction between that brake lining and brake drum to have that seize. . . . The Court: Q. You mean to grip? Another Juror: Q. Lock. Another Juror: Q. Freeze? A. And this particular brake, when they do lock, they lock badly, because of the self-energizing brake."

Again, this witness testified that the defect in the apparatus connected with the brake might automatically cause the locking of the brake or wheel. He said: "This being out of position and allowing this lining to come in contact with this brake drum and creating friction applied this brake by itself, he did not have to use his pedal at all. That is why he got all the braking application on one wheel."

This evidence is consistent with plaintiff's theory that the defective brake automatically caused the locking of the right wheel to a sufficient extent so as to cause a sudden diverting of the course of the machine to the right, resulting in the accident which occurred.

The challenged instruction is proper. It was neither erroneous nor prejudicial.

■ The giving of instructions numbered 35, 36 and 37, respecting the rate of speed with which an automobile may be lawfully driven, is assigned as erroneous. These instructions correctly informed the jury that "the maximum speed at 40 miles an hour is not a license to go at that speed at all times and places", and that the condition of traffic or other circumstances might render unlawful the maximum rate of speed at which an automobile is ordi-

narily permitted to travel. The last of these instructions then advised the jury that it was their sole province to determine from all the facts and circumstances surrounding the accident whether Flouris Du Four was driving in the prudent manner required by law. These instructions are in accordance with the provisions of section 113 of the California Vehicle Act. The maximum rate of speed which is fixed by statute is not a license to run at that rate of speed under all circumstances. It constitutes a limitation of speed beyond which one may not lawfully drive a car. (*Armstrong* v. *Day*, 103 Cal. App. 465 [284 Pac. 1083]; *Soda* v. *Marriott*, 118 Cal. App. 635 [5 Pac. (2d) 675, 678]; *Reaugh* v. *Cudahy Packing Co.*, 189 Cal. 335 [208 Pac. 125]; *Griffith* v. *Oak Ridge Oil Co.*, 190 Cal. 389 [212 Pac. 913].) In the case of *Soda* v. *Marriott, supra,* wherein a judgment was reversed for the giving of erroneous instructions, with respect to an instruction which informed the jury that "it was lawful for Mrs. Marriott . . . to drive her automobile at the time and place mentioned in the complaint herein at a rate of speed not in excess of 35 miles per hour", the court said:

"This instruction is an invasion of the province of the jury, and disregards the mandate of section 113 of the California Vehicle Act, which requires the operator of a vehicle upon a public highway to 'drive the same at a careful and prudent speed not greater than is reasonable and proper, having due regard to the traffic . . . ' Subject to the twenty-mile zone restriction, the jury had the exclusive right to determine the rate of speed which would be lawful under the particular circumstances of the case."

In the present case it was dark; the roadster was crowded with four people riding in the front seat, and the driver had been warned of a dangerously defective brake by having had it freeze on previous occasions. It was proper to inform the jury they had a right to consider all these circumstances in determining whether it was prudent and lawful to drive the machine at the rate of 40 miles an hour. These instructions were neither erroneous nor prejudicial.

It is strenuously insisted that the giving of plaintiff's instruction number 38 is reversible error for the reason that it asserts that the mere violation of section 113 of the

California Vehicle Act with respect to driving an automobile faster than the maximum statutory rate of speed which is authorized, constitutes negligence *per se*, and that upon the contrary this rule of evidence with respect to what rate of speed constitutes negligence *per se*, was changed by the amendment of that section in 1931 (Stats. 1931, p. 2120) and that at the time of the trial of this cause in 1932 the section provided that a mere violation of the speed limitation ''shall not be deemed to have been negligent by reason thereof as a matter of law, but in all such actions the burden shall be upon the opposing party to establish that the operation of such vehicle at such speed constituted negligence''.

■ We are of the opinion the appellants are mistaken in assuming this challenged instruction number 38 informs the jury that the mere violation of the statute with relation to the rate of speed of an automobile constitutes negligence *per se*. The instruction reads:

''I further instruct you that if you find from the evidence in this case that while in the operation of his automobile the defendant Flouris Du Four was guilty of a violation of one or more statutes of the State of California, read to you in these instructions regulating the operation of motor vehicles upon the highways of this state, and that said violation of said one or more statutes *was by him committed in a grossly negligent manner*, or that in the violation thereof, if any such violation occurred, *the defendant failed to exercise slight care*, and that said violation of said one or more statutes proximately caused said accident, and was a proximate contributing cause of the same at the time and place in issue herein, and that there was no negligence on the part of plaintiff contributing proximately to the accident, then I instruct you your verdict must be in favor of plaintiff.''

Clearly this instruction correctly informs the jury that if they find that the driver of the machine violated the speed limitation of the statute by acts ''committed in a grossly negligent manner'', or by conduct which indicated that he ''failed to exercise slight care'' in the performance thereof, and that such acts became the proximate cause of the accident, and the plaintiff was free from contributory negligence, then she was entitled to a verdict in her favor.

It will be observed the jury are instructed they must find the statute was not only violated, but that it was violated by acts committed in a grossly negligent manner. The acts which might be deemed to constitute gross negligence were not specified or even suggested. The same construction of the language is true with respect to the limitation of their power to find the verdict for plaintiff unless the jury first found that the statute was violated by acts which indicated a lack of slight care on the part of the driver of the machine. Since the California statutes have defined gross negligence as the performance of an act without the exercise of slight care, the last-mentioned sentence is merely another way of saying the jury must find the statute was violated by acts which amounted to gross negligence before they were warranted in finding a verdict for the plaintiff. Nowhere in this challenged instruction or elsewhere were the jury charged that the mere violation of the statute limiting the speed of an automobile on the public highway constituted negligence *per se*. ▇ If the language of the above instruction left any doubt respecting the requirement that the plaintiff must affirmatively prove the acts constituting gross negligence on the part of the driver of the machine, which refutes the assumption that negligence might be presumed as a matter of law from the mere violation of the speed law, then the giving of instruction number 46 necessarily removes any such doubt. That instruction reads:

"I instruct you that the burden of proof always rests upon the plaintiff to show the gross negligence of the defendants and to show such gross negligence by a preponderance of the evidence. Such burden never shifts to the defendants to show that they were not negligent."

This last instruction left no possibility for the jury to misunderstand the rule that the burden is upon the plaintiff to prove her charge of gross negligence by a preponderance of the evidence, and that gross negligence may not be implied from the mere violation of the statute limiting the speed of an automobile on the public highway. The giving of this challenged instruction was therefore not erroneous.

▇ The giving of instruction number 42 did not constitute error. It is a correct declaration of the law, and

applies to a reasonable theory of the case which is presented by the pleadings that plaintiff was not riding as a guest of the operator of the machine, but upon the contrary that the occupants of the car were all engaged in a joint adventure. Under such circumstances the plaintiff would have had joint control over the operation of the car, and the negligence of the driver might be imputed to plaintiff so as to defeat her claim for damages. The facts of this case do not warrant this assumption of a joint adventure. This instruction was nevertheless proper. It reads:

"If you believe from the evidence that the plaintiff was riding in the automobile as a guest of the operator thereof, and if you further believe from the evidence 'that she had neither the control over the running of the same, nor the right to control the driver or operation of the said automobile, then I instruct you that the negligence, if any, of the driver of the automobile in which plaintiff was riding cannot be imputed to plaintiff in this case."

The answer of the defendants which was filed in this case denied that the plaintiff was riding as a guest of Flouris Du Four at the time of the accident. It was therefore proper for the court to instruct the jury that if they found her to be riding as a guest, with no control or right to control the operation of the machine, then the negligence of the driver thereof could not be lawfully imputed to her. This instruction was not erroneous.

Instruction number 69 was properly refused. It omits a necessary element to warrant the assumption that the acts of the driver of the machine were so dangerous or negligent as to require the plaintiff to protest against them in order to purge herself of contributory negligence. It reads in part: "If you should find that the defendant, the driver of the automobile in which plaintiff was riding, was driving it *at a high rate of speed* . . . " then it was the duty of the plaintiff to protest, or leave the machine, and upon failure to do so she is not entitled to recover damages for injuries received as a result thereof.

In the case of *Dodds* v. *Gifford*, 127 Cal. App. 629 [16 Pac. (2d) 279, 281], this court held this identical instruction to be fatally defective. The court there said:

"It is apparent that a high rate of speed is not necessarily unlawful or dangerous. The question as to whether the machine was running at a dangerous rate of speed, or at such a high rate of speed as to require the plaintiff to protest, was a problem for the determination of the jury. The instruction omits this necessary element. It is fatally defective."

 We are of the opinion the refusal to give to the jury instruction number 72 was not prejudicial error, for the reason that it contains one fatal defect in its recitation of supposed facts, and because the substance of this charge was sufficiently covered by instruction number 55 which was given. The challenged instruction reads:

"You are instructed that with respect to the condition of an automobile and its brakes the rule is that one invited to ride therein by the owner or driver accepts the machine of her host as she finds it, subject only to the limitation that the driver or host must not deliberately set a trap or be guilty of gross negligence or wilful misconduct contributing to the injury of the guest. So under this rule an automobile owner is not liable to an invited guest riding therein for injuries sustained by the latter because of a defective brake, although it was a secondhand machine, *provided the owner believed the car was reasonably safe* and was not guilty of gross negligence in the matter."

This instruction is misleading. It is drawn upon the theory that the doctrine of *caveat emptor* applies to a guest who voluntarily accepts a ride in an automobile and is injured as a result of a defective brake without knowledge of the defect or negligence on the part of the owner or driver thereof. This is a correct declaration of the law with respect to guests under such circumstances. This instruction, however, omits an essential element. It declares the owner is not liable to a guest for injuries received because of a defective brake, provided only the owner *believes the car is reasonably safe*. In the present case there is substantial evidence that the driver of the car had knowledge of the existence of a defective brake from the previous locking of the wheel. It is apparent that if such previous locking of the wheel would have warned a reasonably cautious person that the brake was dangerously defective, then the owner or driver of the machine could

not escape liability by asserting that he nevertheless believed that it was reasonably safe. The instruction should have contained the following condition: that the owner would not be liable provided that *acting as a reasonably prudent person,* he believed the car to be reasonably safe. The proud possessor of a defective old rattle-trap of a machine might foolishly believe that it was reasonably safe. But he may purge himself of negligence and avoid liability only provided he conducts himself as a reasonable person is required to act under like circumstances. This omission may be cured by the use of the last sentence, to wit, "and was not guilty of gross negligence". We are, however, of the opinion the previous sentence renders the instruction misleading.

Even though this instruction be technically deemed to be a correct statement of the law, we are of the opinion it was sufficiently covered by the giving of number 55 of the court's charge. This instruction reads:

"If you find that the sole proximate cause of the accident resulting in injury to plaintiff was the fact, if it be a fact, that one of the brakes of the automobile which was being driven by the defendant herein, became out of order and that as a result thereof he lost control of the automobile and he skidded into a post, then your verdict must be in favor of the defendant, unless you find that the condition of the brakes and skidding of the automobile, or either of them, was due to the gross negligence or wilful misconduct of the defendant."

There was no prejudicial error in refusing to give this instruction.

The jury was very fully and fairly instructed. There appears to have been no miscarriage of justice.

The judgment is affirmed.

Pullen, P. J., and Plummer, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on June 17, 1933, and an application by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on July 17, 1933, and the following opinion then rendered thereon:

THE COURT.—In denying the petition for a hearing of this cause by this court, we withhold our approval of that portion of the opinion which, in effect, sanctions the form and substance of instruction No. 38, but if error was committed in the giving of the instruction (a point which we do not decide), it was cured by instruction No. 8, as indicated in the opinion.

Petition denied.