[Civ. No. 3063. Fourth Dist. Jan. 18, 1943.]

IRVING McCUTCHEON, Respondent, v. HAROLD J. THOMPSON et al., Appellants.

§

Calvin H. Conron, Jr., for Appellants.

Brittan & Mack for Respondent.

BARNARD, P. J.—This is an action for damages resulting from the death of a minor son of the plaintiff. The boy, who was about three and one-half years of age, was struck by a light delivery truck driven by the defendant Thompson and owned by the other defendants, by whom he was employed. The accident happened about 1 o'clock p. m. on August 14, 1941, on North Chester Avenue, near Bakersfield. North Chester Avenue is the leading traffic arterial connecting Bakersfield with a suburb. It had a 20-foot concrete pavement with a white center line and with eight-foot oiled shoulders, beyond which there were dirt shoulders of about the same width. The parents of the boy lived near the intersection of Belle Avenue with North Chester Avenue, which runs north and south, and the accident occurred a short distance north of this intersection at a point where a driveway came out of a clump of trees on the west side of North Chester Avenue. At that time some men with a tractor were removing some trees on the east side of North Chester Avenue and about opposite this driveway. Shortly before the accident the boy in question had been seen in this driveway with two older boys. The other boys crossed the highway and a little later as this boy was attempting to follow them, running from west to east across the highway, he was struck by the defendants' automobile and killed.

This action which followed was tried by the court without a jury. The court found in all respects in favor of the plaintiff and the defendants have appealed from the judgment.

 It is first contended that there is no substantial evidence to support the finding of negligence on the part of the defendant driver. It appears that Thompson was driving north on the east side of North Chester Avenue for the purpose of

delivering a pump for which there had been a "hurry" call. As he approached the scene of the accident another car was coming south on the west side of North Chester Avenue, driven by a man named Dailey. Dailey testified that when he was about 100 feet north of the driveway to which we have referred he saw the boy run out from the opening and start toward the road; that he slowed down a little because he was afraid the boy might run into the street; that the boy stopped about four feet west of the edge of the concrete; that the boy was "dancing around" and was obviously "poised waiting to go across the highway"; that after he passed the boy he looked in his rear view mirror and saw the boy run across the street until he was hit by the other car; and that he had just passed the Thompson car and estimated that he was only 40 feet past the child when it was struck.

Thompson testified that he observed the Dailey car approaching him from the north; that each car was traveling approximately 30 miles an hour and was on its proper side of the highway; that he was watching the roadway ahead of him but did not see the boy during the time the other car was approaching him because "I wasn't looking way off on the other side of the road"; that there was no obstacle which would have interfered with his vision of the boy except while the Dailey car was passing the boy; that he first saw the boy after his car had passed the Dailey car; that he was then 20 to 25 feet away from the boy; and that he then applied his brakes but was unable to avoid hitting the boy. There is evidence that his car left tire marks on the highway for a distance of 63 feet, angling toward the east edge of the pavement, and evidence justifying the inference that the impact occurred about seven feet south of where those marks ended. The boy's body came to rest on the west oiled shoulder of the highway, about opposite the broken glass on the pavement and near the driveway from which he had emerged.

It is argued that it thus appears that Thompson did not see the boy until he was about 25 feet from him, that he could not have seen the boy earlier, and that he immediately applied his brakes and kept them applied continuously until the truck stopped. While Thompson testified that he did not see the boy until after he had passed the Dailey car, no reason appears why the boy would not have been plainly visible to him before that time, if he had been watching the road. Dailey observed the boy come out and stop at the roadside and Thompson must have had an equal opportunity to see

him. The evidence strongly indicates, moreover, that he did see him at a much greater distance than 25 feet. A traffic officer testified that immediately after the accident Thompson told him ''that he saw the little boy running across the road in front of him, but thought at first the little boy would stop about the middle, so he touched his brakes lightly, and then, after running 25 or 30 feet, he noticed that the boy wasn't going to stop at all, so he slammed on his brakes as much as he possibly could and skidded to a normal stop by the time he hit the boy.'' Thompson did not deny having made this statement to the officer although he said he could not remember it, but he rather confirmed that statement on the witness stand when he testified on cross-examination, ''When I saw he wasn't going to stop then I tried to stop.'' It may reasonably be inferred from this evidence that the skid marks on the pavement represented the distance Thompson traveled after he ''slammed on his brakes,'' and that he had theretofore traveled 25 or 30 feet while expecting the boy would stop at the middle of the road. In view of the child's age it cannot be said, as a matter of law, that Thompson took reasonable precautions under the circumstances which here appear. The entire question was one of fact for the trial court and there is very substantial evidence which sustains the finding made. (*Soda* v. *Marriott*, 118 Cal.App. 635 [5 P.2d 675]; *Scott* v. *Shaw*, 115 Cal.App. 400 [1 P.2d 531]; *Hoy* v. *Tornich*, 199 Cal. 545 [250 P. 565].)

It is next argued that the evidence does not sustain the finding that the parents of this child were not guilty of negligence in allowing him to cross North Chester Avenue unattended. Several witnesses testified that prior to the accident they had seen the McCutcheon children, including the deceased, playing unattended in the vicinity of Chester Avenue. The McCutcheons lived in a four-room rented house on Belle Avenue, a short distance west of the highway. They had four children and Mrs. McCutcheon did her own housework. The father was away at work at the time and the mother testified that she was putting away the dishes after lunch and thought that the little boy was in the yard; that she had seen him about three minutes before the accident in the living room; that the oldest boy had gone out in the yard to shoot birds; that she knew the deceased habitually followed his brother and played with him; that she knew the children sometimes played on Belle Avenue, which is a short street and not a through street; that she had never known any of the

children to play on North Chester Avenue; and that she had warned the children not to go on North Chester Avenue. A neighbor testified that prior to the accident she had seen the McCutcheon children playing unattended on Belle Avenue and in alleys and that she had seen Mrs. McCutcheon on several occasions looking for the children when they had strayed away from the house; that several times when the children crossed the alley into her yard Mrs. McCutcheon came after them; and that on these occasions she heard Mrs. McCutcheon warn the children about playing in the streets and alleys. The most that can be said is that this question was also one of fact, and the evidence sustains the finding in this connection.

The last point raised is that the award of $4,000 as general damages is excessive. This contention is entirely without merit, and we consider it more charitable to refrain from setting forth the arguments advanced in its support.

The judgment is affirmed.

Marks, J., and Griffin, J., concurred.