[Civ. No. 15159. First Dist., Div. Two. Dec. 29, 1952.]

AGNES V. FINLEY, Appellant, v. CITY AND COUNTY OF SAN FRANCISCO et al., Respondents.

Jack Flinn for Appellant.

Dion R. Holm, City Attorney, Donald J. Kropp, Deputy City Attorney, and Dana, Bledsoe & Smith for Respondents.

WAGLER, J. pro, tem.—This is an appeal by plaintiff from a judgment of nonsuit in favor of the California Street Cable Railroad Company, a corporation, and a judgment in favor of the City and County of San Francisco, a municipal corporation, entered upon a jury's verdict in favor of the defendant city and county.

On January 4, 1949, while plaintiff was a fare paying passenger on the cable car of the defendant city and county, she suffered general and special damages by reason of injuries sustained by her when the cable car came to a sudden stop at

the intersection of Hyde and Jackson Streets, at a point where the tracks of each system intersect at right angles and interlock.

On the morning of the accident, and the day before, workmen employed by the defendant California Street Cable Railroad Company had been working on and about the portion of the tracks where they intersect. The plaintiff had no knowledge of the accident, and presented no direct evidence thereon. The defendant city and county presented evidence that a piece of angle iron was stuck in the cable slot of their tracks where the cable slots of the two defendants intersect. They presented evidence that this piece of iron caused the cable car grip to stick and bring the car to a sudden stop.

Plaintiff contends that there was sufficient evidence introduced in her opening case to allow the issue of negligence of the California Street Cable Railroad Company to go to the jury, and that the court misdirected the jury to her prejudice so far as the defendant city and county was concerned.

Only two witnesses were used by plaintiff to establish the facts of the accident; the gripman on the cable car of the defendant city and county and the plaintiff herself. Plaintiff testified only that the cable car stopped suddenly and she was thrown against a stanchion.

The gripman testified that the car in which plaintiff was a passenger stopped at the entrance to the intersection where the accident occurred before proceeding across. That as he looked forward before and as he proceeded, the intersection was clear. There was no obstruction on the rails, and so far as he could see, the slot was clear. The grip was in good condition and he had no difficulty with the operation of the car before the accident. While the car was proceeding across the intersection, it stopped suddenly. It stopped with its front end four or five feet over the nearest rail of the California Street Cable Railroad Company tracks, but not over the rail farthest from the front of the car. On the morning of the accident, the gripman saw workmen working on the tracks of the California Street Cable Railroad Company at their intersection with the tracks of the city and county. The gripman knew most of the trackmen employed by his company, and did not recognize any of the men as employees of his company. The men were working on the tracks of the California Street Cable Railroad Company on the two trips prior to the trip on which the accident occurred. On the afternoon of the day of the accident, he made three trips past the inter-

section in question. The accident happened on the third trip. No workmen were at the scene at the time of the accident.

The rule governing the propriety of the granting of a motion for nonsuit has been stated by the Supreme Court in *Blumberg* v. *M. & T. Inc.*, 34 Cal.2d 226, 229 [209 P.2d 1], as follows: ''A trial court is justified in granting a motion for non-suit '. . . when, and only when, disregarding conflicting evidence, and giving to plaintiff's evidence all the value to which it is legally entitled, indulging in every legitimate inference which may be drawn from that evidence, the result· is a determination that there is no evidence of sufficient substantiality to support a verdict in favor of the plaintiff.' . . . 'Unless it can be said as a matter of law, that . . . no other reasonable conclusion is legally deducible from the evidence, and that any other holding would be so lacking in evidentiary support that a reviewing court would be impelled to reverse it upon appeal, or the trial court to set it aside as a matter of law, the trial court is not justified in taking the case from the jury.' ''

While the plaintiff was not entitled to rely upon the doctrine of res ipsa loquitur in her case against the defendant California Street Cable Railroad Company (*Gerhart* v. *Southern Calif. Gas Co.*, 56 Cal.App.2d 425 [132 P.2d 874]), we believe it may be legitimately inferred from the testimony of the gripman that since the rails were clear, an obstruction of the cable slot at the point where they intersect caused the sudden stopping of the car, and that only employees of the defendant California Street Cable Railroad Company could have caused said obstruction. The causing of such an obstruction would constitute negligence. The trial court was accordingly not justified in taking the case against the California Street Cable Railroad Company from the jury.

That the court gave an erroneous instruction at the conclusion of the case against the city and county of San Francisco, there can be no doubt. The instruction of which plaintiff complains, reads as follows: ''In law we recognize what is termed an unavoidable or inevitable accident. These terms do not mean literally that it was not possible for such an accident to be avoided. They simply denote an accident that occurred without having been proximately caused by negligence. Even if such an accident could have been avoided by the exercise of exceptional foresight, skill or caution, still, no one may be held liable for injuries resulting from it.

Therefore, if you find that this accident was unavoidable, your verdict shall be for the defendant."

■ As a passenger for hire, the defendant city and county owed to plaintiff more than the duty of ordinary care as that term was defined elsewhere in the instructions. The defendant would be liable in damages for acts falling short of negligence as that term was defined in the instructions. The city and county owed to plaintiff the duty to "use the utmost care and diligence" for her safe passage. (Civ. Code, § 2100.) The care required of it was the highest that reasonably could have been exercised, consistent with the mode of transportation used, and the practical operation of its business as a carrier. (*Kline* v. *Santa Barbara Etc. Ry. Co.*, 150 Cal. 741 [90 P. 125]; *Scarborough* v. *Urgo*, 191 Cal. 341 [216 P. 584].)

Ordinary care was defined in the instructions as "that care which persons of ordinary prudence exercise in the management of their own affairs in order to avoid injury to themselves or to others."

Negligence was defined as "the doing of some act which a reasonably prudent person would not do, or the failure to do something which a reasonably prudent person would do, actuated by those considerations which ordinarily regulate the conduct of human affairs. *It is the failure to use ordinary care in the management of one's property or person.*" (Emphasis ours.) This definition is entirely accurate so far as it goes. ■ Negligence, however, is not an absolute term, but a relative one—"relative to the circumstance of the time, of the place, and of the person or persons," (*Conner* v. *Southern Pac. Co.*, 38 Cal.2d 633, 636 [241 P.2d 535]) and when a common carrier is involved, we might add—relative to the status of/or legal relationship existing between the parties concerned.

■ Negligence, insofar as the conduct of a common carrier in its relationship to a passenger for hire is concerned, should be defined as any failure to exercise the utmost care and diligence for the safety of its passenger. (Civ. Code, § 2100.)

■ The instruction to the jury that the defendant could not be held liable even if the "accident could have been avoided by the exercise of exceptional foresight, skill or caution," considered in connection with the limited definition of negligence which was given, was an erroneous state-

ment of the law, and one which in effect removed plaintiff from the category of a fare paying passenger.

The defendant city and county cites the following cases as authority for the instruction given in the instant case: *Polk* v. *City of Los Angeles*, 26 Cal.2d 519 [159 P.2d 931]; *Parker* v. *Womack*, 37 Cal.2d 116 [230 P.2d 823]; *Lawrence* v. *Pickwick Stages, Northern Div., Inc.*, 68 Cal.App. 494 [229 P. 885]; *Smith* v. *Harger*, 84 Cal.App.2d 361 [191 P.2d 25]; *Merry* v. *Knudsen Creamery Co.*, 94 Cal.App.2d 715 [211 P.2d 905]; and *Middleton* v. *California St. Cable Ry. Co.*, 73 Cal.App.2d 641 [167 P.2d 239].

Only two of these cases, to wit: *Lawrence* v. *Pickwick Stages, Northern Div., Inc.*, and *Middleton* v. *California St. Cable Ry. Co.* are cases involving common carriers. The others have no possible application to the question here involved. In the case of *Lawrence* v. *Pickwick Stages, Northern Div., Inc.*, (*supra*) at page 500, the court approved the following instruction, which has at times been construed as an instruction on unavoidable accident: "You are instructed that while you have been advised in these instructions that the defendant, *Pickwick Stages, Northern Div., Inc.*, as a carrier of passengers, was required, under the law, to exercise the highest degree of care in the operation of its passenger vehicles, yet in that connection I charge you that passenger carriers are not to be considered in law as the insurers of the safety of the passengers who travel with them, but are only held to the highest degree of care in the management and operation of their equipment, and if they have fulfilled that duty and some outside instrumentality shall intervene, over which they have no control, such as an act of God, and an accident results therefrom, they would not be liable. . . . Transportation companies are not, as a matter of law, insurers of the safety of their passengers. The law requires of them the highest degree of care and caution in the purchase of equipment and the operation of their vehicles. However, when they have fulfilled these burdens, then if from some outside cause not under their control and not avoidable by the exercise of the highest degree of care and caution about which you have been instructed, an accident happens, the carrier would be absolved from liability." This instruction is in no way similar to the one given in the instant case.

In *Middleton* v. *California St. Cable Ry. Co.*, this court held that the giving of an instruction on the *theory* of un-

avoidable accident was proper. The specific instruction does not appear in the opinion and the case, therefore, is not helpful. It is no authority for the erroneous instruction given in this case. In the Pickwick case, it might be said that instructions were likewise given on the *theory* of unavoidable accident. Instructions on such a *theory* are not objectionable provided they contain an accurate statement of the applicable law.

The defendant city and county advances the argument that even though the challenged instruction may have been error, yet, under article VI, section 4½ of the Constitution of the State of California, the judgment should not be reversed. Defendant supports this argument by pointing out that the jury was fully instructed elsewhere in the instructions on the duties of a common carrier. It is true that the jury was fully instructed in this regard. The effect, however, was only to create a conflict in the instructions.

The giving of conflicting instructions on a material point is error. (*Pittam* v. *City of Riverside,* 128 Cal.App. 57 [16 P.2d 768]; *Torvend* v. *Patterson,* 136 Cal.App. 120 [28 P.2d 413]; *Gillette* v. *San Francisco,* 41 Cal.App.2d 758 [107 P.2d 627]; *Belletich* v. *Pollock,* 75 Cal.App.2d 142 [171 P.2d 57]; *Soda* v. *Marriott,* 118 Cal.App. 635 [5 P.2d 675].)

Still, it is only where the substantial rights of a party have been affected that a reversal is justified. (*James* v. *E. G. Lyons Co.,* 147 Cal. 69 [81 P. 275]; *Fassett* v. *Nascimiento,* 108 Cal.App. 14 [291 P. 269]; *Miller* v. *Dollar Steamship Lines, Inc.,* 19 Cal.App.2d 206 [64 P.2d 1163].)

A reviewing court, of course, cannot anticipate what the evidence upon another trial may disclose. This is especially true where, as in this case, a codefendant, because of the granting of a nonsuit, did not present its defense in the first trial. Assuming that the present record contains no evidence from which it may be inferred that the defendant city and county was in any way responsible for the obstruction of the cable slot, yet, from this fact, it does not necessarily follow that this defendant fulfilled its entire duty to the plaintiff. This defendant, in effect, concedes that it had a continuing duty to inspect and maintain not only its tracks, but the cable slot as well. To show a fulfillment of this obligation, it called as witnesses its division superintendent and the superintendent of cable machinery. The former testified that the company employed a track inspector who made "two round trip inspections daily" and who would

"try the slots on the surface as far as he went along and tried to see if there was anything wrong with the slots." However, to the question, "Did he do that on this [referring to the day of the accident] day?" he answered, "I assume that he did." The superintendent of cable machinery testified that the company records show that on the date in question a track inspector was on duty in the "neighborhood" of the accident. This inspector, however, was not produced as a witness, and no testimony was offered as to the manner or time of inspection. On the day before the accident, the defendant admittedly was. aware of the fact that workmen of the other company were engaged in maintenance work at a point where the tracks of the two companies intersect. Yet, the record contains no direct testimony that any inspection was ever made, either before the repairs were undertaken, during the progress of the work, or thereafter.

Since the giving of instructions which are contradictory make it impossible to determine which charge controlled the determination of the jury (*Soda* v. *Marriott*, 118 Cal.App. 635 [5 P.2d 675]; *Chidester* v. *Consolidated People's Ditch Co.*, 53 Cal. 56; *Buttrick* v. *Pacific Elec. Ry. Co.*, 86 Cal.App. 136 [260 P. 588]; *Gaster* v. *Hinkley*, 85 Cal. App. 55 [258 P. 988]; *Noce* v. *United Railroads*, 53 Cal. App. 512 [200 P. 819]), we have concluded that the erroneous instruction on unavoidable accident was sufficiently prejudicial to require a reversal of the judgment in favor of the City and County of San Francisco.

The judgment as to each defendant is reversed.

Nourse, P. J., and Dooling, J., concurred.

A petition for a rehearing was denied January 28, 1953, and respondent's (City and County of San Francisco) petition for a hearing by the Supreme Court was denied February 26, 1953.