[Civ. No. 5598.  Third Appellate District.—October 3, 1936.]

WILHELMINA FECHTNER et. al., Respondents, v. MANUEL COSTA et al., Defendants; LOS BANOS DAIRYMEN'S ASSOCIATION (a Corporation), Appellant.

Thomas F. Lopez, Stephen P. Galvin, and Butler, Van Dyke & Harris for Appellant.

C. Ray Robinson, James D. Garibaldi and Borton, Petrini & Conron for Respondents.

PULLEN, P. J.—This is an appeal from a judgment, based upon a verdict of a jury in favor of plaintiffs, arising out of an action for damages brought by the widow and children of Paul Fechtner, who was killed by being struck by a truck operated by Manuel Costa and owned by Costa & Cotta, a copartnership.

The accident occurred while Costa was engaged in hauling milk to the creamery of appellant, and the grounds of appeal are, first: Insufficiency of the evidence to support the implied finding of the jury that Costa was a servant of appellant; second, errors in the admission and rejection of certain evidence during the trial, and third, abuse of

discretion in denying the motion for a new trial. The point most strongly emphasized by appellant is that the evidence fails to support the finding that the driver of the truck was an employee of the association.

The arrangements between Costa & Cotta, the association and the milk producers were entirely oral, and it was within the province of the jury to determine the relationship between these parties. In *Giacomini* v. *Pacific Lumber Co.*, 5 Cal. App. 218 [89 Pac. 1059], the question was whether plaintiff was a servant of defendant or an independent contractor. The court there said:

"Where an alleged contract rests entirely in parol, it is the province and duty of the jury to determine whether there is a conflict, and to ascertain and fix its terms, unless these terms are precise and explicit and admit of one construction only."

Likewise in *Chapman* v. *Edwards*, 133 Cal. App. 72 [24 Pac. (2d) 211], where, in a collision between a truck owned and driven by one Klein resulting in the death of Charles Chapman, the same question arose. The arrangements were oral and Klein was paid by the load for dirt he was hauling in his truck. The question of the relationship between Klein and Edwards Bros. was submitted to the jury. The court there held:

" . . . Conceding that there may be certain features of the employment from which an inference supporting the relationship of an independent contractor may be drawn, yet it is equally true that there are present many facts and circumstances from which it might be reasonably inferred that the relationship was that of master and servant. It is only where the evidence is reasonably susceptible of but a single inference that the question of whether one is an employee or an independent contractor becomes one of law for the court."

To the same effect we find, among many others, the cases of *Chas. R. McCormick Lumber Co.* v. *O'Brien*, 90 Cal. App. 776 [266 Pac. 594]; *May* v. *Farrell*, 94 Cal. App. 703 [271 Pac. 789]; *Eng-Skell Co.* v. *Industrial Acc. Com.*, 44 Cal. App. 210 [186 Pac. 163]; *Dillon* v. *Prudential Ins. Co. of America*, 75 Cal. App. 266 [242 Pac. 736].

It is clear, therefore, that the question of relationship between the driver of the truck and the association is a

694

question for the jury to determine, which question was in this case submitted to them under instructions of which no complaint is made.

Let us then examine the facts to see if there is to be found in the record substantial evidence supporting the implied finding of the employee-employer relationship, for if such evidence is found in the testimony and accepted by the jury, that is a complete answer to the contention of appellant. It appears from the evidence that the accident in question happened upon the Pacheco Pass highway near the town of Los Banos. At that time the deceased was assisting some parties who had been in an accident, and while Fechtner was standing between two cars, defendant Manuel Costa, operating a truck owned by himself and Tony M. Cotta, and carrying approximately a five and one-half ton load of 110 milk cans, some filled and some empty, came down the highway and ran into the rear end of one of the parked cars, causing the death of Fechtner.

The appellant, Los Banos Dairymen's Association, operates a large creamery near Los Banos, milk for which is gathered from the producers in that portion of the San Joaquin Valley. The milk is either delivered at the creamery by the producers themselves or is hauled by independent truckmen for the dairymen or, as was the case here, gathered up at the ranches and delivered to the association by truckers, who, it is claimed by respondents here, were employees and servants of the association. In the case of defendants Costa and Cotta, the record reveals that the check by which they were paid while hauling the milk and empty cans involved in this accident, was the check of the Los Banos Dairymen's Association. Upon the check appears in type the following: "This voucher-check is issued in payment of items as per statement following. The endorsement of payee on back will constitute a receipt in full." Then upon the face of the check in typewriting appears, "Hauling: Aug. 1–16, 1934, Incl." This check was signed by the president and secretary-treasurer of the association and endorsed by Costa & Cotta, and was drawn upon the banking account of the association. From the evidence it appeared that they had but one bank account from which they paid all of their employees, and other disbursements connected with the business.

Mr. Costa testified that he had no conversation at any time with the producers whose milk he was hauling concerning the method of payments. Both Mr. Costa and Mr. Cotta at times solicited new customers for the association. No written agreement was produced defining the relationship of Costa & Cotta and the association nor between Costa & Cotta and the milk producers.

At the time of the accident there were approximately 110 milk cans on the truck. These cans belonged to the Los Banos Dairymen's Association, and of the 110 cans, 100 were filled with milk and the remaining were empty, being returned to the association. It was also testified that all cans were returned to the creamery, and each day steamed and scalded by the association. For the services rendered by Costa & Cotta they received eight cents for every hundred pounds of milk delivered to the creamery. This rate was paid regardless of the distance the milk was hauled. This compensation for hauling was deducted by the bookkeeper of the association from the cream check of each milk producer, and the balance thereof paid to the producer, and the amount for hauling paid as heretofore indicated by check of the association directly to Costa & Cotta. Certain producers engaged truckers other than Costa & Cotta who were paid directly by the producers themselves, and in one instance at least, the producer used one of his own employees to haul the milk to the creamery, and these producers received full price from the association for their milk without any deductions for hauling.

Costa & Cotta also returned to the producers, whose milk they collected, the weight and test tags for the milk delivered by them to the association. All of the cans used by Costa & Cotta in their work belonged to the association and the association numbered the cans and weighed and tested the milk delivered by them.

It is contended by respondent that the association had the right to discharge Costa & Cotta. The answer to the question eliciting this information is somewhat ambiguous, but it was for the jury to determine what the witness meant by his language. Mr. Costa was asked: "Q. The Los Banos Dairymen's Association had the right to fire you any time they wanted to, didn't they? A. Well, if I went in the wrong way there, yes." Counsel differ as to

what the witness meant but the jurors were the judges of the meaning and effect of that evidence.

*Hillen* v. *Industrial Acc. Com.*, 199 Cal. 577 [250 Pac. 570], holds that the fact one was performing work and labor for another is *prima facie* evidence of an employment and supports the presumption that such person is the servant and employee of the other in the absence of evidence to the contrary. While a recital of the single transactions between the association and Costa & Cotta standing alone might not be enough to establish the relationship of employer and employee, yet taken together they indicate a course of conduct sufficient to justify the implied finding of employer and employee.

█ Appellant also cites many cases of what they claim to be errors in rulings on evidence. These rulings had to do with the effect of testimony given by a witness, when called under section 2055 of the Code of Civil Procedure; refusal to permit a witness to testify whether or not he was an agent or employee of the association; the asking of certain ambiguous questions which it is claimed resulted in confusion to the witness and misconception of the answers by the jury, and the refusal by the court to permit appellant to call defendant Costa as a witness under section 2055 of the Code of Civil Procedure.

We find no serious error in the rulings of the court upon the matters specified. Perhaps in some instances the court might have reached a different conclusion and made a different ruling but we cannot see that it would have affected the rights of any of the parties to this litigation or the final result as reached by the jury. It is apparent the case was fully and fairly tried and all of the issues presented to the jury, and they, upon competent and sufficient evidence, have determined in accordance with the contentions of respondents.

█ The last contention of appellant is that the court abused its discretion in denying the motion for a new trial. Upon this point the argument of appellant is based upon the opinion of the court, wherein in denying the motion for the new trial, after pointing out various facts in evidence favorable to the association and those favorable to the plaintiffs, it then said: "The jury after hearing the evidence, observing the witnesses, returning a unanimous verdict against

the association thus finding they were bound as principals and the truckmen as their agents delivering milk to them. While the court would have found otherwise I believe there was sufficient evidence upon which a verdict could be based and therefore the verdict is not against law.''

We cannot examine the opinion of the court to determine the holding of the court. The opinion constitutes no part of the record on appeal. (2 Cal. Jur., p. 488. *Classen* v. *Thomas,* 164 Cal. 196 [128 Pac. 329].)

The order entered in the minutes is the only record of the court's action and it is to be measured by its terms and not by the reason the court may give for it. The order of the court is that the motion for a new trial be denied.

We believe the trial court was entirely correct in denying the motion for a new trial, and the verdict of the jury being fully supported by the facts in evidence, the judgment appealed from should be affirmed, and it is so ordered.

Thompson, J., and Plummer, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on November 2, 1936, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on November 30, 1936.