[Civ. No. 3368.   Fourth Dist.   June 26, 1945.]

KATE BROADFOOT, Respondent, v. LEATHER SUPPLY
COMPANY (a Corporation), Appellant.

Monroe & McInnis for Appellant.

Renwick Thompson, Edgar B. Hervey and Henry F.
Walker for Respondent.

BARNARD, P. J.—This is a case involving the liability of the owner of an automobile, under section 402 of the Vehicle Code, for the negligence of the driver thereof.

About 10:45 o'clock p. m. on April 10, 1943, the plaintiff was injured while crossing a portion of Orange Avenue in the city of Coronado. She had just alighted from a north-bound streetcar and while proceeding easterly in a marked crosswalk, toward the nearest curb and sidewalk, she was struck and knocked or thrown a distance of some 36 feet. It rather conclusively appears that she was struck by an automobile driven by the defendant Rowland, although he testified that this car did not strike the plaintiff; that he was proceeding north on Orange Avenue at about 12 miles an hour; that when he reached this intersection he saw the body of the plaintiff lying in the street; that he stopped about half a car length before he reached the body; and that he got out and went to her assistance.

It was stipulated that this automobile was owned by the defendant Leather Supply Company. Permission to drive the car on that day had been given to Rowland by Mr. Gillespie, president of the corporation, acting largely through his daughter who also worked for the corporation, but the evidence is conflicting as to the extent of that permission. Rowland was not employed by the corporation but had become acquainted with the Gillespies at a club where they resided. All of these parties lived in Los Angeles, where the car was kept.

Rowland testified that on April 8, he asked Mr. Gillespie for the use of the car over the weekend; that Mr. Gillespie told him he could have it and to see his daughter; that nothing more was said; that this was the third or fourth time Mr. Gillespie had permitted him to take the car; and that on April 8, Miss Gillespie told him the car was ready for him to use over the weekend and gave him a written order for the car. This note, which was introduced in evidence, was signed by Miss Gillespie but is undated. It is addressed to the manager of a public garage, and reads: ''Please let Mr. Rowland have Mr. R. L. Gillespie's Plymouth Coupe Saturday and Sunday. He will return the car to the garage Sunday evening.'' Rowland further testified that when he went to get the car Miss Gillespie walked to the garage with him and instructed the garage man to give him the car, so the note was not used; that nothing was said as to where he was going with the car; that he

told her he would bring the car back Sunday evening, the 11th; that she did not tell him to bring the car back by Saturday evening; and that he borrowed the car for the weekend and no restriction was placed on his use thereof.

Mr. Gillespie testified that on April 8 or 9, Rowland asked him if he could borrow the car to go to Altadena; that he told him to see his daughter; that this was all of their conversation; that he had loaned the car to Rowland on previous occasions; that two or three weeks before Rowland had asked for the use of the car and he had told him to see his daughter; and that he had then instructed his daughter to let Rowland have it.

Miss Gillespie testified that on the morning of April 10, she was informed by her father that Rowland would ask to borrow the car; that Rowland came to the store that morning and asked to borrow the car; that she told him he could have it if he would promise to have it back at six o'clock that night; that the car was then parked back of the store and she gave him the key and he drove off; that he said he wanted the car to go to Altadena; that nothing was said about driving to San Diego and she would not have permitted him to take the car had she known he was going to do so; that she knew that he did not return the car that night; that she went to the garage the next night (Sunday) and found that the car had not yet been returned; that it was returned, however, by Monday morning; and that Rowland was again allowed to take the car on Friday, April 16.

She further testified that Rowland had been allowed to take the car on the last two weekends in March, again on April 3, again on April 10, and once later, on April 16; that the first time he said he was going to Altadena and had the car Friday and Saturday; that she did not know where he went the second time but that "he just had it one day"; that on April 3 he said he was going to Santa Monica and on April 16 said he was going to Hollywood; that on the occasions he had it for one day, instead of two days, it was only because he asked for it for one day and not because she restricted him to one day's use; that on the first occasion she was not concerned particularly with where he was going except that he just mentioned that he was going to Altadena; that she was not interested in whether or not he went to Altadena, or whether he went to Pasadena, Glendale, Burbank or San Diego; that on the second occasion he did not tell her where he was going and she did not know; that she did not tell him anything about

where he should not take the car; that he was going to take his wife and mother-in-law out and she did not know where he was going to do his sightseeing; that on April 3, he said he wanted to go to Santa Monica but she did not tell him not to go anywhere else; that she did not tell him how many miles he could drive the car but did tell him he would have to furnish his own gasoline; that at no time did she ever tell him not to drive outside of Los Angeles County; that the only time she told him to bring the car back at a particular time was on April 10, when she told him to return it by six o'clock; and that the only restrictions placed on him at any time when the car was loaned to him was first, that he must furnish his own gasoline, and second, on the trip of April 10, that he should have the car back at six o'clock. She also testified that she gave Rowland the written order for the car, above referred to, on the first occasion he borrowed it and not on or about April 10. In that connection, she testified that the first time he borrowed the car she went to the garage with Rowland on Friday night, introduced him and told the garage man to let him have the car the next morning, and that later that evening she gave him the written order for the car. It may be observed, in passing, that the jury may well have doubted her testimony that the written order was given in connection with the first permissive use of the car, since on that occasion she had already personally introduced him at the garage and arranged for his use of the car.

In connection with the matter of permission the court instructed the jury, among other things, that if it found that in giving possession of this automobile to Rowland the owner had limited his use thereof, either with respect to time or place, it must appear that his use was in accordance with the permission as thus limited before the owner could be held liable and that, on the other hand, if it found that the permission given Rowland was without limitation or that his use at the time of the accident was within any limitation placed thereon then Rowland's negligence, if any, would be imputed to the owner. The jury returned a verdict in favor of the plaintiff as against both defendants. A motion for a new trial was denied and judgment was entered imposing the statutory amount as against the corporation, and a larger amount against Rowland. The judgment has become final as against the driver, but the owner has taken this appeal.

The appellant's main contention is, in effect, that the trial

judge committed reversible error in refusing to grant its motion for a new trial. It is argued that it is thoroughly established in this state that the owner is not liable in such a case where his restrictions, as to time or place, on the use of the car have been exceeded or violated; that any finding of permissive use at the time in question must rest solely on Rowland's testimony; that his testimony is unworthy of belief because he even claimed that the car had not struck the respondent; that his testimony was so thoroughly discredited that a finding of permissive use is clearly contrary to the weight of the evidence; that the court found this to be true; that the court, having found that the jury's finding was contrary to the weight of the evidence, should have granted a new trial; that although the judge disagreed with the jury as to the weight of the evidence, he refused to act because he was mistaken as to the law in that he improperly concluded that by loaning the car the appellant became automatically liable and could not limit its liability by any attempted restriction, as to time or place, on the use of the car, and that it follows that the court erred in denying a new trial.

These contentions are based on certain remarks made by the trial judge during the proceedings on the motion for a new trial. At the first hearing, after argument by counsel, he pointed out that while permission to use the car was established there was a conflict with regard to just what the permissive use was to be. He then indicated that there could well be an honest difference of opinion in resolving this conflict and that he might be wrong in his own views. After remarking that Rowland's testimony was to be distrusted because he had testified that he had not hit the respondent, he pointed out that there was a weakness in "the other testimony on this point of permission" which he regarded as important. This was that Rowland had been allowed to take the car again, shortly after he had violated the permission granted him. He then observed that if this violation made no difference to the owners it indicated that "Rowland felt free to use it generally." He then stated that he would, of course, be bound by the Engstrom case (*Engstrom* v. *Auburn Auto. Sales Corp.*, 11 Cal. 2d 64 [77 P.2d 1059]) "if it is applicable. It may not be." He then asked for further assistance from counsel.

At a subsequent hearing the judge made a lengthy statement in which he expressed belief that Rowland was told to have the car back at Los Angeles at six o'clock that day and

that his permissive use was to take the car to Altadena in Los Angeles County, but that this was not "enough for me to deny the motion for a new trial." He expressed the belief that the Souza decision (*Souza* v. *Corti*, 22 Cal.2d 454 [139 P.2d 645, 147 A.L.R. 861]) was in conflict with the Henrietta and Engstrom cases (*Henrietta* v. *Evans*, 10 Cal.2d 526 [75 P.2d 1051] and *Engstrom* v. *Auburn Auto. Sales Corp., supra*), but remarked that he was not "taking it upon myself to decide something contrary to" the latter two cases. He then said: "There is not to my mind any conceivable method of interpreting that statute one way for one contract of bailment and another way for another contract of bailment, and so I stand." He then denied the motion, after which, in response to a question from counsel as to whether it was his feeling that the weight of the testimony was with the Gillespies, with respect to the claimed limitation as to time and place, he replied in the affirmative.

It is difficult to tell from his remarks the precise reasons which impelled the judge to deny the motion. While he expressed a "feeling" that the weight of the evidence, with respect to the extent of the permission granted, was on the side of the appellant he also indicated that he had considerable doubt as to whether he was right in this regard. Such a doubt is understandable in view of the written direction to the garage man to let Rowland take the car for Saturday and Sunday, and the weakness of Miss Gillespie's explanation that she signed that authority on a prior occasion immediately after she had taken Rowland to the garage and personally arranged for him to be allowed to take the car. There is also her testimony that on the five occasions he was allowed to take the car the only time limitation imposed was on the day of this accident; that although she knew that he then kept the car for at least an additional twenty-seven hours she again loaned him the car a week later; that, other than on April 10, she had never been interested in limiting his use of the car to one day; and that on no occasion did she give any instructions as to where he should go or that he should remain within the county.

While the judge expressed the belief that the Souza decision was in conflict with the Henrietta and Engstrom cases he not only said that he was not sure they were applicable here, but that he was not taking it upon himself to decide something contrary to those cases.

■ The matter as to the extent of the permissive use of the car on this occasion presented a close question of fact and it cannot be said from the record that the clear weight of the evidence was on either side. The jury's implied finding is amply sustained by the evidence. While the trial court can set a verdict aside on motion for a new trial, where he takes a contrary view of the evidence, and while it is his duty to do so where he is convinced the jury was wrong on material points, it is another matter to hold that he is compelled to do so when the evidence is amply sufficient to sustain the verdict, and when he is not very firmly convinced that the jury has wrongly decided the controlling questions of fact. While, in thinking out loud, the judge expressed conflicting ideas, some of which may not be legally sound, he did not base his ruling on the idea that the law prohibited an owner from limiting his liability by any attempted restriction as to time or place of the use of the car. He had otherwise instructed the jury, and he stated that he was not then deciding contrary to the Engstrom and Henrietta cases. While he contradicted himself in the course of his reasoning, after reviewing the whole matter, with its questions, doubts and inconsistencies, he came to the conclusion that the verdict should not be disturbed. If the question were otherwise open here, it could hardly be said, as a matter of law, that under the circumstances here appearing the appellant was entitled to a new trial.

When a new trial is granted the finding of the jury is set aside. That is not the situation here. The question of permission was submitted to the jury on correct instructions as to the law. A new trial having been denied the implied finding of the jury on that question still stands as the only finding of fact in that connection. It is supported not only by rather strong affirmative evidence but by obvious weaknesses in the evidence to the contrary. It cannot be said that the verdict is contrary either to the law or to the facts. ■ The order denying the motion for a new trial merely recited that the appellant had moved for a new trial and ordered the same denied. It has frequently been held that the orders actually entered are the official pronouncements and that it is the orders themselves which are reviewable and not the reasons which the court may have given for its action. (*Estate of Finkler,* 7 Cal.2d 97 [59 P.2d 801] ; *Moore* v. *Specialty Oil Tool Co.,* 128 Cal.App. 662 [18 P.2d 82] ; *Fechtner* v. *Costa,* 16 Cal.App.2d 691 [61 P.2d 473].) Nothing here appears

which is contrary to law under the facts as found, and no abuse of discretion, or reversible error appears in this connection.

■ The appellant further contends that the implied finding of negligence on Rowland's part is without evidentiary support. It is argued that if it be assumed that this car struck the respondent there is nothing to indicate negligence on Rowland's part. The evidence fully justifies the inference that the respondent was walking in a marked crosswalk toward the nearest curb and that the driver failed to yield the right of way. (*Nicholas* v. *Leslie,* 7 Cal.App.2d 590 [46 P.2d 761]; *Hall* v. *Kaufman,* 37 Cal.App.2d 264 [99 P.2d 339].) While this was a dim-out area at the time, there is evidence that this intersection was fairly well illuminated by a street light and that Rowland was driving the car with only its parking lights on, which were not of the size and strength permitted in dim-out zones. While Rowland testified at one time that he was driving 25 miles an hour, and later changed this to 12 miles an hour, the fact that the respondent was thrown a distance of some 36 feet justifies the inference that his speed was excessive for that time and place, especially since he should have seen that a streetcar had just stopped and discharged its passengers. This contention is without merit.

■ The respondent has moved to strike from the transcript the remarks made by the trial judge in passing upon the motion for a new trial. Without going into the matter thus suggested we prefer to deny that motion.

The motion to strike is denied and the judgment is affirmed.

Marks, J., and Griffin, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied August 16, 1945.