[Civ. No. 17548.   First Dist., Div. One.   Feb. 26, 1958.]

Estate of MARY ROHDE, Deceased. NELLIE FUST RUCKES, Respondent, v. HOWARD MAGEE, as Executor, etc., Appellant.

Bert W. Hirschberg and Charles Reagh for Appellant.

Jacobsen & Tobin for Respondent.

McMURRAY, J. pro tem.*—The will of Mary Rohde was admitted to probate after her death in November, 1952; within the six months' period allowed for contest, the respondent instituted proceedings to set aside the will. The trial resulted in a jury verdict in favor of the contestant, based on two grounds:

(1) That the testatrix was mentally incompetent, and

(2) That the will was the product of undue influence.

A motion for judgment notwithstanding the verdict was denied as to undue influence. The trial judge, however, held that the evidence as to mental incompetency was insufficient to support the verdict. A motion for a new trial was denied. This appeal is from the judgment revoking probate of the will.

Mary Rohde was 82 years old on October 16, 1951, when she executed the will, which is here concerned. She had no children, no relatives in the United States, and her husband had predeceased her by two years. There is much testimony in the record as to Mrs. Rohde's mental condition. This, however, is not involved in this appeal, and will not be here considered.

Several days before making the will, Mrs. Rohde called a friend and told her that she had made an appointment by phone with Mr. Magee. The friend had never before met Mr. Magee. Mrs. Rohde asked this friend to take her to Mr. Magee's office; this the friend did and upon arriving there Mrs. Rohde recognized Mr. Magee and introduced him to her

---

*Assigned by Chairman of Judicial Council.

friend.  Mr. Magee then took Mrs. Rohde into his private office.

There is conflict in the testimony as to the purpose of Mrs. Rohde's visit at this time.  Some of contestant's witnesses claim she went to the office for the purpose of obtaining legal assistance in cancelling the sale of her home.  Mr. Magee stated that he knew nothing about the proposed sale of the home on the day the decedent visited his office.  The real estate salesman, who had negotiated the sale, testified that Mr. Magee had telephoned him the morning the will was made, and stated that Mrs. Rohde was in his office, and that he read portions of the sale agreement to the real estate salesman. The salesman further testified that Mr. Magee told him that Mrs. Rohde came down to consult him about the selling of the property.  Mr. Magee testified that Mrs. Rohde came to his office to prepare her will.  After Mrs. Rohde went into Mr. Magee's office, his secretary came out to the car to see the friend, who had driven her down there, and stated that Mr. Magee wished to see her.  Mr. Magee met her in an outer office, and told her that Mrs. Rohde was making a will, and decided to include her as a beneficiary, and he wished to get the proper spelling of her name.

Mrs. Rohde was alone with Mr. Magee for approximately 15 minutes, according to the testimony of the proponent of the will.  During that time the will was discussed and notes were taken, from which the will was prepared by Mr. Magee's secretary.  The secretary was given these notes and proceeded to type a short will.  It was estimated that this took from ten to twenty minutes.  During that time Mrs. Rohde was alone with Mr. Magee.  After the will was typed, Mr. Magee went next door to Mr. Devlin's office (Mr. Devlin is an attorney with offices located next to Mr. Magee's) and Mr. Devlin was asked to witness the will, but when told that Magee was the chief beneficiary requested that he be left alone in the office with Mrs. Rohde.

Mr. Devlin had never met Mrs. Rohde before this time. Mr. Magee told him that the will had been prepared in accordance with Mrs. Rohde's wishes.  After Mr. Magee had left the room at Devlin's request, Devlin read the will word for word to Mrs. Rohde, asking her at the end of each clause if that was her will.  To each clause she answered affirmatively that it was her will.  Thereafter, Mr. Devlin called Mr. Magee back into the private office, and he and Mr. Magee's secretary attested the document.  Mr. Magee was not present when it

was executed. Thereafter Mr. Devlin went back to his office, obtained two paper backs for the will and affixed them to the will. The will, therefore, appears to have been prepared by Mr. Devlin at his address, rather than by Mr. Magee at his address next door.

When Mrs. Rohde left Mr. Magee's office, he helped her into the automobile, in which her friend was, and handed the friend a five-dollar bill, remarking, "Mrs. Rohde wants you to have this $5." From this friend's testimony it appears that the entire transaction at Mr. Magee's office did not take more than an hour and possibly even less time. Mr. Magee's secretary, who was an attesting witness to the will, testified that she typed the will from a work sheet given her by Mr. Magee, that she had typed many wills during the 10 years she had worked for Mr. Magee and knew how to type them from notes. The residuary clause of the will reads, "my good friend and attorney, Howard Magee." The secretary stated this wording was not on the work sheet given her by Mr. Magee, that she was not sure whether he had verbally told her to word it in that manner or whether she did so automatically. The secretary testified that after she witnessed the will she did not see Mrs. Rohde again except when she passed through the reception room on her way out.

Mr. Magee, the executor and chief beneficiary of this will, had never visited Mrs. Rohde at her house prior to October 16, 1951, the date of the making of the will, but had seen her at meetings of the Nelson A. Miles Auxiliary, U.S.W.V., where his mother and Mrs. Rohde were members.

Before drawing the will, Mr. Magee had acted as Mrs. Rohde's attorney on one prior occasion. After the death of her husband, Mrs. Rohde consulted him for assistance in filling out a claim form to receive a pension, as the widow of a Spanish-American War veteran. This was in April of 1949. Upon the death of her husband, she did not seek Mr. Magee's assistance in the transfer of bank accounts, the recording of the deed on the home or any other matters. The will made no mention of the contestant, who was the niece of Mrs. Rohde's predeceased husband, nor did the will make any mention of her closest friends.

The trial judge filed a memorandum opinion, denying the motion for new trial, which reads as follows: "Memo on Order Denying New Trial.

"It is my opinion that a trial Judge should not disregard a verdict or determine what result he would have reached if

the case had been tried before him, without a jury; instead, he should consider the proper weight to be accorded to the evidence and then decide whether there is sufficient credible evidence to support it.

"In this case we have the presumption, which is evidence, running through the entire case; it is substantial and credible and cannot be disbelieved (if such an act is possible). This shows the effect of the irrational rule in California that a presumption is evidence and is not dispelled by rebutting evidence. How then could I conscientiously say, if I were to grant a new trial on the ground of insufficient evidence, that there was insufficient credible evidence to sustain the verdict of the jury? A trial Judge does not act as a thirteenth juror. It is the duty of the trial Judge to see that the jury intelligently and justly performs its duty and in the exercise of proper legal discretion to determine whether there is sufficient credible evidence to sustain the verdict.

"Motion for new trial is hereby denied."

■ The appellant argues that by the language of this memorandum it appears affirmatively that the trial judge did not properly perform his duty, since from the language it appears that the court did not consider the evidence which was introduced to overcome the presumption of undue influence, which arose from the attorney-client relationship here involved. The first paragraph of the memorandum of opinion is certainly a proper statement of the trial judge's duty in passing upon a motion for a new trial. It is in the second paragraph, where he expresses some displeasure with the California rule regarding presumptions, which gives rise to the question of his performance of his duties. However, despite the fact that the trial judge expressed dissatisfaction with the California rule, it does not appear that he did not properly perform his duty. There is no affirmative showing that he did not weigh the evidence contrary to the presumption and find that the presumption was the better evidence. His expression of dissatisfaction may well be taken to be more academic and philosophical than actual. Furthermore, the language relative to the duty of the trial judge, "to see that the jury intelligently and justly performs its duty . . .," shows that the trial judge did in fact consider the justice of the verdict and properly so. In the case of *People* v. *Robarge*, 41 Cal.2d 628, 634 [262 P.2d 14], it appears affirmatively that the trial judge did not perform his duty, as he stated: ". . . that it was mindful of 'the rule that the jury

are the sole judges of the credibility of the witness. It adheres to that rule to the extent that even though the Court disbelieves what the witnesses may have said, if there is sufficient evidence upon which the jury may base their decision, even though the Court sits as a thirteenth juror, it is not in a position to upset the verdict of the jury.' '' There is no such affirmative showing in the language used here. It should not be assumed that a trial judge, who shows the awareness of his duties evidenced by the memorandum here written, which in fact contains verbatim many of the phrases contained in *People* v. *Robarge, supra,* would be so well acquainted with his duty and then ignore that duty. The passage in the memorandum opinion here under consideration relative to the rule on presumptions as continuing evidence throughout the case is no doubt a reference to the rule in California that a presumption is evidence to be weighed against adverse evidence. The trial judge's dissatisfaction with this rule is not unique. It has been expressed many places. However, it is the law of this state, and when it is considered that this same trial judge fully and correctly instructed the jury as to the role of presumptions in relation to other evidence in California, it should not be assumed that, upon the motion for a new trial, he neglected to apply these same rules.

It has often been said that the opinion of the trial court, while of great assistance to an appellate court, is really no part of a record and that the decrees and orders are the matters for consideration by an appellate court, not the reasons for the judicial decision. (*Estate of Finkler,* 7 Cal.2d 97, 103 [59 P.2d 801] ; *Broadfoot* v. *Leather Supply Co.,* 69 Cal.App.2d 729, 735 [160 P.2d 59] ; *Fechtner* v. *Costa,* 16 Cal. App.2d 691, 697 [61 P.2d 473].) Appellant urges strongly that the trial judge's memorandum shows conclusively that he merely looked to see if there was any evidence to support the jury's finding. A reading of that opinion shows by its very language that the trial judge searched for credible evidence and sufficient credible evidence to sustain the verdict, and that he considered the proper weight to be accorded to the evidence. He nowhere says that he did not consider appellant's evidence.

The appellant urges that the trial court committed error in giving and refusing certain instructions.

▮ The jury was correctly instructed that it could consider both direct and circumstantial evidence and that both are admissible and any fact in the case may be proven by

either direct or circumstantial evidence or both. Appellant argues that they were then incorrectly told as follows: "You are instructed that direct evidence as to undue influence is rarely obtainable and hence you *must* determine the issue of undue influence by inferences drawn from all the facts and circumstances. Circumstantial evidence may be sufficient to support a finding of undue influence. Taken singly the facts or circumstances may be of little weight, but taken collectively they acquire their proper weight." [Italics added.] Appellant argues that this instruction told the jury to disregard certain direct testimony, that of Mr. Devlin, where he testified that he went over Mrs. Rohde's will with her phrase by phrase, asking her if those were her wishes and that she had replied affirmatively as to each phrase. Assuredly, this first instruction complained of by using the word "must," which is here emphasized in the first quoted instruction, was an incorrect statement of the law in conjunction with the evidence before the jury in this case. However, by reading the very numerous instructions, which were given to the jury, it becomes evident that by placing undue emphasis on this one word an incorrect interpretation of the instructions as a whole would result. The jury was also instructed: "You are instructed that the presumption of undue influence may be explained and rebutted by testimony of persons present at the time the instrument was executed, by proof that the testatrix gave instructions for the preparation of the instrument, and by evidence that the testatrix subsequently affirmed or expressed approval of its provisions. Whether it has been rebutted is a question of fact for you as jurors to determine." The proper approach in viewing such an inconsistency between instructions is stated in *Soda* v. *Marriott*, 118 Cal.App. 635, where, at pages 642-643 [5 P.2d 675], it is stated: "It is true that some of the incorrect principles announced in the foregoing challenged instructions were elsewhere correctly stated to the jury in other instructions which were given. It is also true that the instructions which were given must be construed as a whole, in determining whether they contain reversible error. If a single instruction omits an essential element of the cause, but is a correct declaration of the law so far as it goes, and the omitted element is correctly given in another instruction, the omission will ordinarily be cured thereby. If, however, an essential principle of law is stated to the jury materially incorrect, this prejudicial error will not ordinarily be cured by a correct declaration of the same principle in another instruction. The giving of

instructions which are contradictory in essential elements may warrant the reversal of a judgment for the reason that it is impossible to determine which charge controlled the determination of the jury.'' The instruction complained of is general in nature. Another general instruction told the jury they could consider both direct and circumstantial evidence on all issues involved and a specific instruction, in effect, told them they could consider the testimony of Mr. Devlin. The error in the instruction relative to the circumstantial evidence was not prejudicial in view of the other instructions here given.

█ The second instruction complained of is as follows: ''You are instructed that although undue influence and fraud are not the same thing, and one may exist without the other, yet *undue influence may be exerted by means of fraud.* Confidence or influence may be used to obtain an unfair advantage over another party in a variety of ways.'' [Italics added.] Appellant argues that this instruction is error, in that there was no evidence of the existence of fraud and that by the mention of fraud the jury was led to believe that the judge believed that fraud might have entered into the case. This instruction was under the facts of this case error. However, the passage heretofore quoted from in *Soda* v. *Marriott, supra,* 118 Cal.App. 635, would again seem to be controlling, and in view of the numerous instructions regarding the jury's duty and the law in the case, which were correctly given, it does not appear to have been prejudicial particularly when it is remembered that no evidence of fraud appears in the record. As is said in *Erickson* v. *Water Land Truck Lines,* 119 Cal. App.2d 210, 212 [259 P.2d 484], ''It would credit jurors with less than average understanding to assume that they were confused or misled by the challenged instruction. The instructions as a whole were clear, correct and comprehensive, although it is true that some part of the particular instruction might have been modified.

█ '' 'It is elementary that a judgment will not be reversed for error which can be found only by detaching a portion or portions of a charge from the context, when such charge in its entirety fairly and correctly states the law.' ''

█ The trial court also refused to give a requested instruction, which was submitted by appellant, which read as follows: ''Any degree of influence resulting from kindness and attention to the testatrix can never constitute undue influence within the meaning of the law. Mere acts of kindness and solicitude performed with honest motives without regard for

monetary gain should not be regarded by you as undue influence.'' The instruction might well have been given, but would have required modification, since the first sentence of the requested instruction is not a true statement of the law as it is too broad, since although kindness and attention alone would not constitute undue influence, they might, when combined with other factors, amount to such influence. There were many and adequate instructions given on the subject of undue influence, and it was properly defined for the jury. The fact that they were not given the requested instruction would not, in our opinion, amount to reversible error when the facts of this case are considered.

The judgment is affirmed.

Bray, Acting P. J., and Wood (Fred B.), J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied April 23, 1958.