[Civ. No. 23310. First Dist., Div. Two. Nov. 25, 1966.]

Estate of SAMUEL DUHANEY, Deceased. OLIVE LOUISE DUHANEY, Petitioner and Respondent, v. ROSALIE TILLMAN CALENDAR, Objector and Appellant.

Roger M. Hughes for Objector and Appellant.

Metoyer & Sweeney and Carl B. Metoyer for Petitioner and Respondent.

TAYLOR, J.—On this appeal by the niece of the pre-deceased. first wife of Samuel Duhaney (hereafter testator) from a decree entered after special verdicts denying her contest to his December 1962 will naming as chief beneficiary his second wife, the respondent, the only questions concern the

instructions on undue influence and the propriety of the rejection of certain expert testimony.

As no contentions are raised concerning the sufficiency of the evidence, a brief summary of the pertinent facts will suffice. The testator died on November 8, 1963, leaving a will executed December 3, 1962, devising almost all of his $25,000 estate to respondent, Olive Louise Duhaney, whom he had married on October 2, 1962. Appellant, Rosalie Tillman Calendar, the niece of the testator's predeceased first wife Lenora, known as Suzie, was the chief beneficiary of a prior will executed in 1949.

The testator left his native Martinique after the earthquake of 1902 and married Suzie in 1913 in Mexico. Their marriage was resolemnized in 1917 after they came to Oakland. They had no children but raised a foster son, Jack Clemons, and helped send his children to college. From 1940 to 1943, appellant lived with them. The testator worked as a cook for Southern Pacific from 1917 until 1958, when he retired after an accident. After his retirement, he spent all of his time at home taking care of his roses and vegetable garden, and looking after his rental properties, including the triplex in which he lived. His chronological age was not known but estimated to be between 74 and 80 at the time of his death. In the last five years of his life, he suffered from diabetes, glaucoma causing blindness in one eye, arteriosclerosis, cancer of the prostate and the kidney infection that was the underlying cause of his death. Some of these ailments, particularly the diabetes and glaucoma, required daily care as well as frequent trips to the hospital clinic, particularly after October 1962, when he had to go every two weeks.

Suzie died on July 13, 1962, after an illness of several months, and left all of her property to the testator in accordance with their mutual wills executed in 1949. After her death, appellant moved in to keep house and take care of the testator. In August 1962 the testator contacted the attorney for Suzie's estate and made a new will devising most of his property to his daughter (not Suzie's child) and grandchildren in Jamaica. The attorney, at the testator's request, also prepared a general power of attorney to one Charles English. The power of attorney was never executed as the testator was able to get around and take care of his affairs. In September 1962, Charles English indicated to appellant that she could go home to her family as he had a power of attorney and would thereafter take care of the testator's affairs and get a housekeeper.

Appellant had no hard feelings about this matter as she knew Mr. English was an old and trusted friend of the testator and the executor of Suzie's will. She continued to visit the testator several times a week and took him to the hospital for his bimonthly visits to the clinic.

Respondent testified that she first met the testator in 1923. After Suzie died, she saw him more often and went out with him. She became his housekeeper in September 1962. They were married in Reno on October 2, 1962, and returned to Oakland the same day. About a week later, the testator took her to his banks to add her name to his accounts. After the marriage, respondent lived with the testator and took care of him, but continued to work and also maintained a residence in San Lorenzo for her two children who were then 17 and 21 years old. Because of her job, she could not usually take the testator to the hospital but depended on appellant and other friends to do so. She also assisted the testator in the management of his properties and made withdrawals from and deposits to their joint bank accounts, at the testator's request, and paid the bills.

Sometime in the latter part of October or the first part of November 1962, the testator, accompanied by respondent, went to see the attorney about the preparation of a new will and discussed its provisions in detail. The testator indicated that he had taken care of his daughter and grandchildren in Jamaica and now wished to make respondent and her children his chief beneficiaries. The will was drafted in accordance with these instructions. On November 28, the testator entered the hospital where the will was executed on December 3 in the presence of respondent, with the attorney and his secretary as witnesses. After being treated for an insulin reaction and his other conditions, the testator was discharged from the hospital on December 7. He recovered sufficiently to be in very good shape at an eggnog party at Christmas. After March or April of 1963, his condition continued to decline until his death on November 8, 1963.

There was substantial conflict in the evidence concerning the mental and physical condition of the testator at the time of the execution of the December 1962 will and whether he and respondent were, in fact, married and living together at that time.

On November 14, 1963, respondent filed her petition for probate of the December 1962 will. In March 1964, appellant filed her contest on grounds of lack of due execution, lack of

testamentary capacity and undue influence exerted by respondent, and also filed an action to impress a constructive trust on the property of the testator's estate on the basis of the mutual wills executed in 1949 by the testator and Suzie. Both actions were consolidated for trial. The will contest was submitted to the jury for special verdicts as to due execution, testamentary capacity and undue influence. This appeal is taken from the decree entered on the special verdicts in favor of respondent. No appeal has been taken from the judgment in the trust action which was subsequently tried without a jury and also resolved in favor of respondent.

■ The first contention on appeal is that the court improperly sustained an objection to the following question asked of one of the medical experts by appellant's counsel: "In his [testator's] general mental condition, say for instance the first part of October, would he be swayed by the influence of any person?" The objection was made on the ground that the question was not within the realm of expert opinion.

Although the question was vague and uncertain in that all persons are subject to being swayed by others in varying degrees, we think the relative susceptibility of the testator to the influence of others under the circumstances of this case is clearly within the ambit of expert medical testimony. However, no prejudice was suffered by appellant here in view of the doctor's additional testimony revealing the testator's deteriorated physical condition, his inability to understand what he was signing and that he was not of sound and disposing mind. As we are reversing the judgment on other grounds, it is suggested that though the subject matter of the question is proper, it should be phrased in a more definitive form on retrial.

■ Appellant next argues that the court erred in instructing that: "*Mere persuasion or advice, or the influence of affection or gratitude, is not an improper influence in securing the execution of a will.* The influence which justifies the setting aside of a will must be such as deprives the decedent of his agency, destroys the freedom of his purpose, and renders the testamentary instrument an expression of the will of another rather than his own, and it must operate at the time the will is made." (Italics added.) Appellant cites *Estate of Rohde,* 158 Cal.App.2d 19 [323 P.2d 490], wherein the appellate court affirmed the refusal of the following: "Any degree of influence resulting from kindness and attention to the testatrix can never constitute undue influence within the meaning of the

law. Mere acts of kindness and solicitude performed with honest motives without regard for monetary gain should not be regarded by you as undue influence." (Pp. 26, 27.)

In *Rohde*, the court indicated that only the first sentence of the instruction was erroneous and inferred that the second sentence, which is similar to the instruction here complained of, might well have been given. In the instant case, the qualification in the second sentence of the instruction further clarified the limited application of the first sentence and no error was committed.

Appellant next argues that certain instructions concerning undue influence and confidential relationships were contradictory and served to confuse and mislead the jury to her prejudice. We agree. The record indicates that the court properly instructed the jury that the will contest was based on two separate grounds that had to be resolved separately, the mental incapacity of the testator and undue influence of respondent, and discussed the presumptions of sound mind and testamentary capacity. The court then stated that section 22 of the Probate Code provides that a will procured by undue influence may be denied probate and defined undue influence as follows: "Undue influence consists.: (1) in the use by one in whom a confidence is reposed by another, or who holds a real or apparent authority over him, of such confidence or authority for the purpose of obtaining an unfair advantage over him; or (2) in taking an unfair advantage of another's weakness of mind; or (3) in taking a grossly oppressive and unfair advantage of another's necessities or distress."

Thereafter, the court instructed the jury that: "*A presumption of undue influence arises from proof of a confidential relationship between a beneficiary and a decedent plus proof of activity on the part of the beneficiary in the preparation of the will, and proof that such beneficiary unduly profited by the will.*" (Italics added.) After indicating that direct evidence of undue influence was rarely obtainable, the court said: "Before there is imposed upon the proponent of a will the obligation of presenting evidence of volition, and before the question as to undue influence becomes one of fact for the determination by a jury, *there must be* evidence, the probative force of which establishes (1) relations between the one charged with exercising the undue influence and the decedent affording the former an opportunity to control the testamentary act; (2) *that the decedent's condition was such as to permit of a subversion of his freedom of will*; (3) that there

was activity on the part of the person charged with exercising undue influence; and (4) that such person unduly profited as beneficiary under the will. It is also the law that evidence must be produced that pressure was brought to bear directly upon the testamentary act. None of these factors alone will create a presumption of invalidity, but in combination they make the question one of fact." (Italics added.)

This was followed by an instruction that: "If you should believe that all the circumstances *which I have instructed you are necessary to create a presumption of undue influence* are present in this case, then the proponent has the burden of meeting that prima facie case, but it is sufficient if he produces just enough evidence to counterbalance the prima facie case, and it is not necessary for her to prove the absence of undue influence by a preponderance of the evidence." (Italics added.) The court then gave the following instructions on confidential relationships: "A confidential relationship, as those terms are used in these instructions, exists whenever trust and personal confidence are reposed by one person in the integrity and fidelity of another, and such trust and personal confidence are known to and accepted by such other person."

"A confidential relationship exists between a husband and wife who are living together."

Here, the existence of a confidential relationship was definitely in issue. There was conflicting testimony whether respondent and the testator were married and living together at the time the will was executed. The law is clear, and the court correctly instructed the jury, that where a confidential relationship is shown, *there is a presumption of undue influence if the beneficiary actively participates in the preparation of the will and unduly profits thereby (Estate of Nelson,* 227 Cal.App.2d 42 at p. 57 [38 Cal.Rptr. 459]; *Estate of Llewellyn,* 83 Cal.App.2d 534 [189 P.2d 822, 191 P.2d 419]; *Estate of Graves,* 202 Cal. 258 [259 P. 935]; *Estate of Higgins,* 156 Cal. 257 [104 P. 6]; *Estate of French,* 225 Cal.App.2d 9 at p. 20 [36 Cal.Rptr. 908]). However, the court subsequently instructed the jury, in effect, that *the presumption of undue influence does not arise unless the contestant shows four elements, one of which is that the testator's condition was such as to permit of a subversion of his freedom of will.* This subsequent instruction is also a correct statement of the law, but only where no confidential relationship is established (*Estate of Llewellyn, supra; Estate of Graves, supra*).

We think that in the absence of an introductory state-

ment therein to that effect, the second instruction was in conflict with the first. In view of the sharply varying evidence as to the mental and physical condition of the testator, whether or not the testator and respondent were married, and whether there was a confidential relationship between them, the error was prejudicial. ■ While the instructions must be considered as a whole, the giving of instructions which are contrary in essential elements warrants the reversal of a judgment as it is impossible to ascertain which charge controlled the determination of the jury (*Estate of Rohde*, 158 Cal.App. 2d 19, pp. 25-26 [323 P.2d 490].)

The decree is reversed for retrial as to that portion holding that the will of the testator was not procured by the undue influence of respondent, and affirmed in all other respects.

Shoemaker, P. J., and Agee, J., concurred.

A petition for a rehearing was denied December 23, 1966, and the judgment was modified to read as printed above.